FILED
United States Court of Appeals
Tenth Circuit

October 3, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAPETH PAULEK,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

      Defendant - Appellee.

No. 16-1007
(D.C. No. 1:13-CV-03264-LTB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

    Japeth Paulek appeals from a decision of the district court affirming the

Commissioner's denial of disability insurance benefits and supplemental security

income.  Mr. Paulek argues that the administrative law judge (ALJ) erred in

(1) relying on a medical expert and interpreting the assessment of a consultative

examining physician; (2) accounting for his allegations of pain; and (3) concluding at

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

step four that he could return to his past work. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm in part and reverse in part.

**I**

Mr. Paulek applied for disability insurance benefits and supplemental security income in January 2011, claiming he was disabled by Type I diabetes mellitus with neuropathy in his lower extremities, lower back pain, depression, arthritis, and fibromyalgia.

Dr. Michelle Warfield, a consultative examining physician, submitted an evaluation of Mr. Paulek's mental impairments. She observed that his depression began six months prior to the exam when "he became less motivated 'because of [his] pain.'" Aplt. App. Vol. 3 at 777. She also found that he had difficulty with concentration; he was unable to perform serial 7s, spell Denver backwards, identify the number of weeks in a year, and name what continent Brazil is on. She ultimately diagnosed him with adjustment disorder with a chronically depressed mood and gave him a global assessment of functioning (GAF) score of 60. Dr. Warfield concluded that his cognitive abilities appear limited and though he "should be able to understand, remember, and carry out simple one-step instructions," he "would likely have marked difficulty in understanding and carrying out complex instructions." *Id*. at 778.

At the hearing, Dr. Alan Coleman testified as a medical expert. He testified that he had "done an awful lot of endocrinology." *Id*. at 848. Dr. Coleman identified the following complications rooted in Mr. Paulek's diabetes: neuropathy in his lower

2

extremities, retinopathy, and nephropathy. Of these complications, Dr. Coleman opined that only the neuropathy could constitute a severe impairment. Recounting an examination of Mr. Paulek that found his legs to have normal sensation with bilateral strength and with deep tendon reflexes bilaterally equal, Dr. Coleman observed that these "are not the findings that we see in somebody who's got nerve damage because the nerve damage affects the . . . strength, and generally eliminates the reflexes." *Id.* at 854. Calling it "a little bit vexing," Dr. Coleman noted that Mr. Paulek has "had bad uncontrolled diabetes for a long time, [so] it's not surprising that he would have some nerve damage." *Id.* at 854–55. "On the other hand, it's not documented by anything in the medical record. . . . I don't think I can say that he's got severe neuropathy." *Id.* at 855.

On this basis, Dr. Coleman testified that he would impose the following limitations: Mr. Paulek could be up on his feet for four hours in an eight-hour workday and sit for six hours; lift 20 pounds occasionally and 10 pounds frequently; and occasionally climb stairs, climb a ladder, bend, stoop, kneel, and crawl. Regarding Mr. Paulek's back pain, Dr. Coleman observed the lack of a herniated disk or sciatica, noting that his "examinations have been normal" and "[t]here's no evidence that it's a severely limiting back pain." *Id.* at 859. Regarding his fibromyalgia, Dr. Coleman acknowledged that Mr. Paulek was in pain but opined that such pain did not constitute a severe impairment because "[a]ll of the examinations that we have here are that his strength is good [and] [h]e can do things." *Id.* at 859–60.

3

After considering this and other evidence, the ALJ issued an unfavorable decision. At step two of the five-step sequential evaluation, he found that Mr. Paulek suffered from the following severe impairments: insulin-dependent diabetes mellitus type I with neuropathy and mild retinopathy and nephropathy, gastroesophageal reflux disease, chronic lower back pain, fibromyalgia, and depression. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process). Finding no impairment to meet the severity of a listed impairment at step three, the ALJ proceeded to determine Mr. Paulek has the residual functional capacity (RFC) to perform light work with the following limitations:

> he is limited to 30 minutes of sitting per episode for 6 hours in an 8-hour day. He can stand for 30 minutes at a time and walk for 15 minutes at a time for a total of 6 hours standing and/or walking in an 8-hour day. The claimant can occasionally use foot controls, climb, stoop and crouch. He can never be expos[ed] to unprotected heights, moving mechanical parts, extreme cold and vibration. The claimant can tolerate occasional exposure to extreme heat, dusts, odors, fumes and pulmonary irritants, and he can occasionally drive as part of his work duties. Mentally, the claimant is able to understand, remember and carry out simple instructions.

Aplt. App. Vol. 1 at 31. At step four, the ALJ determined Mr. Paulek could perform his past relevant work as a service station attendant, relying on the vocational expert's (VE) testimony.[1]

---

[1] The VE also testified at the hearing that Mr. Paulek could return to his past work as a cashier.

4

In discussing the relevant medical evidence, the ALJ relied heavily on Dr. Coleman's testimony. He cited Dr. Coleman's analysis of Mr. Paulek's neuropathy, recounting:

> [T]here are no significant objective findings to support a diagnosis of diabetic neuropathy. Dr. Coleman noted several instances in the record where despite the claimant's alleged pain he had normal neurologic findings of the lower extremities, including normal sensation, strength and reflexes. He opined that such findings were not consistent with true nerve damage and that indeed at least one examining doctor described the claimant's pain as "muscular" in nature. Dr. Coleman conceded that the claimant has had consistent complaints of neuropathic pain, but in the absence of substantiating objective findings he did not think this was a severe condition.

*Id.* at 33 (citations omitted). The ALJ also noted Dr. Coleman's analysis of Mr. Paulek's lower back pain — "he has consistently had normal examinations of the spine and lower extremities, failing to support any significant limitations caused by this complaint." *Id.* at 33. The Appeals Council denied review and the district court affirmed.

**II**

On appeal, Mr. Paulek argues that the ALJ should not have relied on Dr. Coleman's expert assessment and misinterpreted Dr. Warfield's mental RFC assessment. He also contends that the ALJ failed to properly consider his allegations of pain in determining his RFC. Finally, he insists the ALJ erred at step four because his past relevant work requires skills restricted by his RFC. We review the Commissioner's decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v.*

5

*Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In doing so, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

**A**

Mr. Paulek frames his argument about Dr. Coleman's testimony like an issue of weight applied by the ALJ, but in maintaining that Dr. Coleman was simply incorrect in his medical assessment by virtue of overlooking certain evidence of record, this claim amounts to nothing more than a challenge to the ALJ's RFC determination as unsupported by substantial evidence. An ALJ must determine a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). While the "record must demonstrate that the ALJ considered all of the evidence," there is no requirement that an ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted).

Mr. Paulek points to multiple pieces of evidence in the record that he thinks undermine Dr. Coleman's, and thus the ALJ's, assessment of his impairments. But we fail to see a meaningful distinction, or any for that matter. Mr. Paulek asserts that the ALJ ignored a nerve conduction test that "produced abnormal results in [his] left and right lower extremities, and his right upper extremity, establishing polyneuropathy." Opening Br. at 23. The doctor performing that test, however, noted twice that it showed evidence of "mild" neuropathy, Aplt. App. Vol. 3 at 629, 630, which comports with Dr. Coleman's conclusion that Mr. Paulek likely has

6

"some nerve damage" but not severe neuropathy, *id*. at 855 (testifying "I don't think we have anything that strongly corroborates a diagnosis of severe neuropathy."); *see also* Aplt. App. Vol. 2 at 572 (consultative examiner observing mild sensory neuropathy). There is no requirement that the ALJ, in adopting Dr. Coleman's analysis, "reference everything in the administrative record," *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010), especially when the evidence supports the ALJ's conclusion, *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). In any event, Mr. Paulek was found to have normal sensation and strength in his legs on other occasions. *E.g.*, Aplt. App. Vol. 3 at 691, 748. Thus, even if Mr. Paulek was right about the nerve conduction test, the ALJ was "entitled to resolve [such] conflicts in the record." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Mr. Paulek also avers that the ALJ's decision is in direct conflict with lumbar and cervical MRIs performed in March 2010, "which showed disc dessication and disc space narrowing," among other things. Opening Br. at 23–24. But Mr. Paulek again cherry picks words in this evidence to the exclusion of the relevant findings. The cervical MRI revealed "mild disc dessication throughout the cervical spine with mild disc bulges, and thus "[n]o significant findings." Aplt. App. Vol. 2 at 412. The lumbar MRI likewise revealed "[d]isc dessication at T12-L1 with mild disc space narrowing." *Id*. The radiologist therefore concluded that the exam was "overall unremarkable" but for the mild narrowing. *Id*. at 413. These findings are entirely consistent with the ALJ's conclusion that Mr. Paulek's examinations were normal and failed to support any significant limitations, especially in light of other evidence

7

that shows he had a normal gait, full or close-to-full range of motion in his back. *Id*. at 572; *see Haga*, 482 F.3d at 1208.

## B

Mr. Paulek argues that the ALJ misinterpreted the evidence by characterizing his GAF scores of 60 and 50 as "mild" and "moderate," respectively, when such scores are actually "moderate" and "serious" according to the *Diagnostic and Statistical Manual of Mental Disorders*. However, Mr. Paulek concedes in his reply brief that he is "not arguing that serious or moderate GAF scores necessitate a finding of disability." Reply Br. at 3. "Rather, Mr. Paulek contends that this mistake represents another example of the ALJ's failure to adequately review and understand the medical evidence in the record." *Id.* Our task is not to take alleged mistakes of the ALJ as exemplary of larger, more fundamental mistakes and call it a day, especially when we have found the other "mistakes" he alleges to be anything but. It is Mr. Paulek's obligation to put forth specific points of error for our consideration. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) ("But [claimant] identifies no factual or legal errors compelled by the ALJ's use of the word "mild" to describe her obesity."); *see also Garrett v. Selby Connor Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of . . . constructing arguments and searching the record."). Mr. Paulek fails to "identify how the ALJ's [characterization] affected his RFC determination or his ultimate conclusion of nondisability." *Howard*, 379 F.3d at 947. In any event, the ALJ's RFC determination is consistent with Dr. Warfield's RFC assessment

8

notwithstanding the GAF inconsistency, as he adopted the limitations therein. Mr. Paulek has thus failed to identify any error by the ALJ as to his mental impairment.

## C

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). In evaluating whether a claimant has disabling pain, we consider whether the claimant has proffered objective medical evidence of a pain-producing impairment, and if so, whether there is a loose nexus between the claimant's subjective allegations of pain and the impairment, and if so, whether the claimant's pain is in fact disabling, considering both objective and subjective evidence. *Id*. (citing *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir. 1987)).

Mr. Paulek contends that, considering his subjective claims of pain resulting from his diabetes, the ALJ was required to "make findings regarding the *Luna* factors." Opening Br. at 27. But we discern no omission by the ALJ. He expressly found that the objective evidence showed impairments that could reasonably be expected to produce the symptoms alleged. Aplt. App. Vol. 1 at 32. In finding Mr. Paulek's allegations not credible, however, the ALJ specifically noted that he "is without significant objective findings, failing to support an inability to engage in all sustained employment as alleged at the hearing." *Id*. at 32–33. Not only that, the ALJ pointed out that Mr. Paulek's testimony regarding his activities of daily living is "not consistent with a totally disab[ling] level of physical impairment." *Id*. at 33.

9

The ALJ thus considered the degree to which Mr. Paulek's subjective claims were consistent with the medical evidence, *see* SSR 16-3p, 2016 WL 1119029 at *5–6, which comports with *Luna*.

**D**

Mr. Paulek argues that his limitation to understanding, remembering, and carrying out simple instructions renders him unable to perform the work of a service station attendant because that work requires a reasoning level of three under the *Dictionary of Occupational Titles (DOT)*.[2] *DOT* level-three reasoning requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *DOT* Vol. 2 at 1011. In contrast, level-two reasoning requires enough understanding to carry out "detailed but uninvolved instructions," and level-one reasoning requires only the ability to carry out "simple one- or two-step instructions." *Id*.

As Mr. Paulek notes, we have previously held that a limitation to "simple and routine work tasks . . . seems inconsistent with the demands of level-three reasoning." *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (internal quotation marks and citation omitted). While we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, the Eighth Circuit has held that a limitation to simple

---

[2] Incidentally, though the ALJ did not make any findings about Mr. Paulek's past work as a cashier, that job also has a reasoning level of three. *DOT* Vol. 1 at 183.

instructions is inconsistent with both level-two and level-three reasoning. *See Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997). An "ALJ must investigate and elicit a *reasonable explanation* for any conflict between the [*DOT*] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (emphasis added); *see also Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00-4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [*DOT*.]").

Though the ALJ asked the VE whether his testimony was consistent with the *DOT*, it clearly was not, and the ALJ did not make alternative findings at step five. Thus, there is a conflict between the VE's testimony and the job descriptions in the *DOT* for service station attendant and cashier. The ALJ failed to have the VE reconcile this conflict and therefore committed reversible error. On remand, to comply with *Haddock*, the Commissioner will need to elicit a reasonable explanation as to how Mr. Paulek can perform two level-three-reasoning jobs with a limitation to carrying out simple instructions or proceed to step five.

## III

We affirm the ALJ's decision as to the first three issues, reverse in part the judgment of the district court, and remand the case to the district court with

11

instructions to remand the case to the Commissioner for further proceedings consistent with this order and judgment.

                                   Entered for the Court


                                   Bobby R. Baldock
                                   Circuit Judge