**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 17, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GEORGIA L. KRUEGER,

　　　　Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

　　　　Defendant-Appellee.

No. 08-5146
(D.C. No. 4:07-CV-00198-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

　　　　Georgia L. Krueger appeals from an order entered by the district court

affirming the Social Security Commissioner's denial of her applications for

---

[*]　　　After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

disability and disabled widow's insurance benefits under the Social Security Act.[1]

Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we

reverse and remand for further proceedings.

**I.**

Ms. Krueger was born in 1953. She has an eleventh grade education and

was previously employed as a cashier, receptionist, and bailiff. She alleges that

she became disabled on April 15, 2003, due to chronic anxiety, pain (back, neck,

knee, left shoulder, and left foot), sore throat, burning red eyes, chronic diarrhea,

irritable bowel syndrome, memory problems, headaches, stress, and depression.

Ms. Krueger's medical history is thoroughly summarized in the district court's

order, *see* Aplt. App., Vol. 1 at 54-62, and in the Commissioner's response brief,

*see* Aplee. Br. at 4-11, and we will not repeat that history here.

After Ms. Krueger's applications for benefits were denied initially and on

reconsideration, a de novo hearing was held before an administrative law judge

(ALJ) in June 2006. In a decision dated August 8, 2006, the ALJ subsequently

denied Ms. Krueger's applications for benefits at steps four and five of the

---

[1] In order to obtain disabled widow's insurance benefits, a claimant such as Ms. Krueger who is between the age of fifty and sixty years old must establish that she has a "disability" as that term is defined under 20 C.F.R. § 404.1505 for purposes of an award of disability insurance benefits. *See* 20 C.F.R. § 404.335(c). We therefore apply the same standards to both of Ms. Krueger's applications for benefits.

five-step sequential evaluation process for determining disability,[2] finding that: (1) Ms. Krueger suffered from severe impairments consisting of "status post [left-knee] meniscectomy and chondroplasty of the left patella, irritable bowel syndrom, cervical disk disease, and depression/anxiety," Aplt. App., Vol. 2 at 16; (2) Ms. Krueger's statements concerning the effects of her allegedly disabling symptoms were not entirely credible, *id.* at 18; (3) as of the date of the ALJ's decision, Ms. Krueger had the physical residual functional capacity (RFC) to frequently lift twenty pounds and occasionally lift fifty pounds, to stand/walk or sit for an entire eight-hour workday, and to frequently bend, squat, crawl, climb, and reach, *id.* at 16-17; (4) testing by a mental consultative examiner indicated that Ms. Krueger suffered from moderate to severe depression and anxiety that significantly affected her ability to engage in work related activities and included a mild limitation pertaining to activities of daily living, a moderate limitation pertaining to maintaining social functioning, and a mild limitation pertaining to concentration, persistence, and pace, *id.* at 18; but (5) despite her severe physical and mental impairments, as of the date of the ALJ's decision, Ms. Krueger was capable of performing her past relevant work as a cashier, receptionist, and bailiff, as well as other work that exists in significant numbers in the national

---

[2] The five-step sequential evaluation process for determining disability under the Social Security Act is set forth in 20 C.F.R. § 404.1520(a)(4).

economy; specifically, the jobs of data entry clerk, telephone answerer, mail room clerk, pricer/marker, order clerk, and labeler, *id.* at 19-20.

In February 2007, the Appeals Council denied Ms. Krueger's request for review of the ALJ's decision. Ms. Krueger subsequently filed a complaint in the district court. In August 2008, the district court entered an order and a related judgment affirming the denial of Ms. Krueger's applications for benefits. This appeal followed.

**II.**

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Doyal*, 331 F.3d at 760. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

In this appeal, Ms. Krueger claims the ALJ committed reversible error by: (1) failing to perform proper evaluations at steps four and five of the sequential evaluation process; and (2) failing to perform a proper credibility determination. We agree on both points, and therefore reverse and remand for further proceedings.

**A. The ALJ's Evaluations at Steps Four and Five.**

As found by the second mental consultative examiner, Dr. Vaught, Ms. Krueger has a moderate mental limitation pertaining to her ability to interact appropriately with the general public. *See* Aplt. App., Vol. 2 at 223. At the hearing before the ALJ, the ALJ instructed the vocational expert (VE) to accept this mental limitation as supported by the administrative record in determining, as part of the step-four inquiry, whether Ms. Krueger was capable of performing her past jobs. *Id.* at 257-58. The VE then testified that Ms. Krueger's moderate mental limitation pertaining to her ability to interact appropriately with the general public would not prevent her from performing her past jobs as a cashier, receptionist, and bailiff. As the VE explained:

> Your honor, she, in my opinion, from what the RFCs indicate, the moderate limitation on [interacting with] the public does not - - it does affect but it would not preclude her ability to perform the basic work functions. In my opinion, then, she could do the mental requirements of the jobs that she had been doing.

*Id.* at 259. On cross-examination by Ms. Krueger's counsel, the VE further elaborated on this point as follows:

There is, under social interaction, the ability to interact appropriately with the general public, a moderate [limitation]. However, that, generally speaking, in itself, again, because that's the only one marked in the social interaction [category], would not necessarily mean she could not do basic work functions. And for the most part, the work as a cashier, receptionist, bailiff, she's not doing intense kinds of questioning, like interviewing, you know, these kinds of work functions are fairly straightforward in job descriptions.

*Id.* at 265.

We conclude that there is a conflict between the VE's testimony and the job descriptions in the Dictionary of Occupational Titles (4th ed. 1991) for the jobs of cashier, receptionist, and bailiff. A conflict exists because, contrary to the testimony of the VE, the DOT defines these jobs as requiring "significant" contact with people.[3] *See* DICOT 211.462-014 (Cashier-Checker), 1991 WL 671841 at 2; DICOT 237.367-038 (Receptionist), 1991 WL 672192 at 2; and DICOT 337.667-010 (Bailiff), 1991 WL 673189 at 2.[4] The ALJ failed to ask the VE to reconcile this conflict, however, and the ALJ therefore committed reversible error in violation of this court's holding in *Haddock v. Apfel*, 196 F.3d

---

[3]     As we have previously noted, "[e]ach job listed in the DOT is described by reference to various components. One component is 'Worker Functions.' The worker function labeled 'People' expresses the degree of interaction with other people that the job requires." *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005). All three of Ms. Krueger's past jobs have a people rating of 6, which means that they require "[t]alking with and/or signaling people to convey or exchange information [and] giving assignments and/or directions to helpers or assistants." DOT, Vol. II at 1006 (4th ed. 1991).

[4]     "DICOT" is the name of the on-line database on Westlaw that contains all of the job descriptions that are found in the fourth edition of the Dictionary of Occupational Titles.

1084, 1091 (10th Cir. 1999) (holding that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability"). *See also Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations); *Poppa v. Astrue*, __ F.3d __, 2009 WL 1488953 at *4 (10th Cir. May 27, 2009) (noting that Social Security Ruling 00-4p[5] "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]").

Our conclusion that a conflict exists between the VE's testimony and the DOT is not at odds with our decision in *Hackett*. In *Hackett*, we concluded that there was no conflict between statements in the DOT that the jobs of "call-out operator" and "surveillance-system monitor" required significant contact with people and Ms. Hackett's inability to have direct contact with the general public due to a mental impairment. *See Hackett*, 395 F.3d at 1175-76. *Hackett* is distinguishable, however, because, as we noted in our opinion in *Hackett*, the full DOT job descriptions for the jobs of call-out operator and surveillance-system monitor "indicate[d] that contact with people [was] rather limited." *Id.* at 1175. Here, by contrast, the full DOT job descriptions for the jobs of cashier,

_____

[5]     *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

receptionist, and bailiff clearly indicate that extensive contact with people is an important aspect of the jobs. *See* DICOT 211.462-014 (Cashier-Checker), 1991 WL 671841 at 1; DICOT 237.367-038 (Receptionist), 1991 WL 672192 at 1; and DICOT 337.667-010 (Bailiff), 1991 WL 673189 at 1. As a result, in accordance with *Haddock*, this case must be remanded to the Commissioner so that additional step-four testimony can be obtained from the VE.

In addition, as pointed out by Ms. Krueger in her reply brief, "[t]wo of the six jobs found by the VE for [Ms. Krueger] to perform at step 5 also require significant dealing with the public. These are the [jobs of] telephone answerer and . . . order clerk." Aplt. Reply Br. at 9; *see also* DICOT 235.662-026 (Telephone-Answering-Service Operator), 1991 WL 672176 at 2; DICOT 209.567-014 (Order Clerk, Food and Beverage), 1991 WL 671794 at 2. On remand, in order to comply with *Haddock*, the Commissioner will also need to obtain additional testimony from the VE regarding these two jobs. In the alternative, the Commissioner has the option of obtaining additional testimony from the VE to confirm that there are no conflicts between the DOT and the other four jobs identified by the VE at step five, which appears to be the case as the DOT states that those jobs do not require significant contact with people. *See* DICOT 203.582-054 (Data Entry Clerk), 1991 WL 671700 at 2; DICOT 209.687-026 (Mail Clerk), 1991 WL 671813 at 2; DICOT 209.587-034 (Marker), 1991 WL 671802 at 2; DICOT 209.587-010 (Addresser), 1991 WL 671797 at 2.

Finally, in order to address certain concerns raised by Ms. Krueger in her opening brief regarding the ALJ's step-five findings, *see* Aplt. Opening Br. at 25-26, the ALJ will also need to determine on remand whether Ms. Krueger's limited mathematical skills (as noted by the ALJ in his first and second hypothetical questions to the VE; *see* Aplt. App., Vol. 2 at 257, 261) preclude her from performing any of the jobs identified by the VE at step five.

## B. The ALJ's Adverse Credibility Determination.

For purposes of both steps four and five, Ms. Krueger is also challenging the ALJ's adverse credibility determination. It is well established that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotation and alteration omitted).

According to the testimony of the VE at the hearing before the ALJ, if Ms. Krueger's testimony at the hearing regarding her irritable bowel syndrome (IBS) and the related problem of frequent and uncontrollable bowel movements is accepted as true, then she is unable to work at any job. *See* Aplt. App., Vol. 2 at 245, 248-49, 261-62, 265-66. In his decision, the ALJ found that Ms. Krueger's allegations regarding her IBS were not credible because she "takes no

medications and sees no physician for it." *Id.* at 19. This adverse credibility finding is not supported by substantial evidence in the record, however, because the medical evidence shows unequivocally that Ms. Krueger consulted with her treating physician (Dr. Hakel) on a number of occasions for treatment of her IBS both before and after her alleged onset date, and the treatment included prescribing medication and a referral for a colonoscopy. *Id.* at 139, 140, 143, 148-49, 229, 231, 232. Further, the second physical consultative examiner (Dr. Sutton) specifically found that Ms. Krueger "certainly does seem to have a valid diagnosis and problem with irritable bowel syndrome." *Id.* at 207; *see also id.* at 206 (listing IBS under "Overall Impression"). Consequently, we conclude that the ALJ committed reversible error when he rejected Ms. Krueger's testimony regarding the symptoms caused by her IBS based on a purported lack of medical treatment.

**CONCLUSION**

In light of the errors outlined above, we have determined that it is necessary to remand this case to the Commission for further proceedings. Specifically, on remand, the Commissioner shall obtain additional testimony from the VE to determine: (1) whether the VE can provide a reasonable explanation reconciling Ms. Krueger's moderate mental limitation pertaining to her ability to interact appropriately with the general public with the DOT's descriptions of the job requirements of her past jobs and the jobs of telephone answerer and order

-10-

clerk;[6] and (2) whether Ms. Krueger's IBS and her related problem of frequent and uncontrollable bowel movements preclude all work.[7] Although the latter issue was addressed by the VE at the hearing before the ALJ, it was addressed in the context of a number of additional alleged mental and physical impairments. *See* Aplt. App., Vol. 2 at 261-62. As a result, on remand, the ALJ shall obtain testimony from the VE to determine whether Ms. Krueger's IBS, standing alone, precludes all work. In addition, the Commissioner shall obtain testimony from the VE concerning the combined effect, if any, of Ms. Krueger's IBS and her moderate mental limitation (as imposed by Dr. Vaught) pertaining to her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Aplt. App., Vol. 2 at 223. The latter issue needs clarification because both Ms. Krueger and the Commissioner have been somewhat imprecise in their briefing regarding the underlying cause of Ms. Krueger's alleged need for unscheduled work breaks.[8]

---

[6] As noted above, the Commissioner has the option of obtaining additional testimony from the VE to confirm that there are no conflicts between the DOT and the other four jobs identified by the VE at step five.

[7] On remand, the Commissioner may obtain additional medical or other evidence if it is determined that such evidence is necessary to properly evaluate the work limitations caused by Ms. Krueger's IBS.

[8] Because Ms. Krueger is not challenging the ALJ's physical RFC findings at steps four or five, *see* Aplt. Opening Br. at 21-26, the Commissioner does not

(continued...)

-11-

The judgment of the district court is REVERSED and this case is

REMANDED to the district court with instructions to REMAND the case to the

Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[8](...continued)
need to revisit the ALJ's adverse credibility determination regarding
Ms. Krueger's alleged physical limitations. Likewise, the Commissioner does not
need to revisit the ALJ's adverse credibility determination regarding
Ms. Krueger's mental impairments. Despite his adverse credibility finding, the
ALJ included all of the mental limitations imposed by Dr. Vaught in his
hypothetical question to the VE, *see* Aplt. App., Vol. 2 at 257-58, and
Ms. Krueger is not arguing that the ALJ should have included additional mental
limitations.