**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0648n.06

Case No. 16-5560

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Dec 05, 2016

DEBORAH S. HUNT, Clerk

JERRY JOYCE, )
)
    Plaintiff-Appellant, )    ON APPEAL FROM THE UNITED
)    STATES DISTRICT COURT FOR
v. )    THE WESTERN DISTRICT OF
)    TENNESSEE
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant-Appellee. )

BEFORE: DAUGHTREY, CLAY, and COOK, Circuit Judges.

COOK, Circuit Judge. Jerry Joyce appeals the district court's order granting summary judgment in favor of the Commissioner of Social Security (Commissioner) on his claim for disability insurance and supplemental security income. Because substantial evidence supports the Commissioner's finding that Joyce is not disabled, we AFFIRM.

I.

Joyce applied for social security benefits in 2008, alleging disability onset in 2007. He initially claimed that leg injuries sustained in a childhood accident prevented him from working, but later added concentration problems, depression, and a bad back to his list of impairments. Following multiple hearings, two unfavorable decisions and appeals, and a district court remand, the Appeals Council assigned Joyce's case to a new ALJ in 2014. That ALJ held a hearing on

July 9, 2014 and considered the record anew. Because Joyce cabins his appeal to the ALJ's findings regarding his cognitive limitations, we summarize the evidence only as it pertains to those impairments.

At the time of the hearing, Joyce was 31 years old and living with his aunt. Joyce's aunt prepared a function report indicating that he shops for and prepares his own food, showers, changes his clothes, does his laundry, and helps with household chores. Joyce also prepared his own function report acknowledging that he can pay bills and count change, though noting that he sometimes needs reminders to bathe, care for his hair, and shave. Joyce has a driver's license.

Joyce earned a high school diploma from Oakhaven High School in 2001. He enrolled in both remedial and non-remedial classes at Oakhaven and his grades ranged from A to F. Joyce attended special-education classes until the sixth grade.

During his claimed disability period, Joyce worked briefly as a fast-food cook, forklift driver, oil change technician, and stocker, though none of these positions qualified as "substantial gainful activity" under the Social Security Act. *See* 20 C.F.R. § 416.974(b) (setting earnings threshold for what qualifies as "substantial gainful activity"). Joyce worked at a Petro Truck Stop between September 2012 and January 2014 before being fired on suspicion of theft. Because his job at Petro rendered him ineligible for benefits starting in 2012, he amended his disability claim to seek benefits for the closed period between 2007 and 2012.

Dr. William Little, a clinical psychologist, examined Joyce in 2010 at the request of a state agency. Joyce claimed inability to work because of leg and back problems but did not describe any cognitive impairments other than a preoccupation with the death of his father, who was murdered when Joyce was 13. Joyce reported that he had never sought mental-health

treatment and described his "biggest worry" as being denied disability benefits because "he was unable to find a job."

Dr. Little asked Joyce a series of questions to assess his memory, recall, and basic computational ability. From Joyce's responses, Dr. Little deduced that Joyce "likely functions in the borderline range of intelligence." Dr. Little ruled out a diagnosis of "mild mental retardation" (MMR), finding Joyce's ability to obtain a high school diploma and driver's license inconsistent with MMR. In Dr. Little's opinion, Joyce "has the intellectual ability to perform a wide range of concrete tasks at a minimum," would have "no restriction in performing simple work," but might "have mild restriction in performing complicated tasks." Dr. Little also noted that Joyce showed no deficits in adaptive functioning—i.e., the ability to socialize and perform day-to-day tasks—and appeared to be exaggerating his cognitive limitations.

At the request of Joyce's aunt, another clinical psychologist, Dr. Paul Neal, examined Joyce in 2011. Joyce presented with a flat, depressed affect and informed Dr. Neal that his umbilical cord had been wrapped around his neck at birth. Dr. Neal administered an IQ test that resulted in a full-scale score of 65, placing Joyce in the bottom 1% of the population.

In sharp contrast to Dr. Little, Dr. Neal concluded that Joyce functioned "in the extremely low range of intelligence." Dr. Neal opined that Joyce's low intelligence was "[c]learly" and "undoubtedly due to the fact that his umbilical cord was wrapped around his neck at birth resulting in brain problems." Dr. Neal diagnosed Joyce with "mental retardation" and believed that he "will never be capable of any gainful employment now or in the foreseeable future."

After reviewing the relevant evidence, the ALJ concluded that Joyce "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." The ALJ then found that

Joyce was not disabled because "there are jobs that exist in significant numbers in the national economy that [he] can perform." In making this finding, the ALJ relied on the testimony of a vocational expert (VE) who identified "cashier" and "ticket seller" as jobs consistent with Joyce's capabilities.

The ALJ's determination became the Commissioner's final decision when the Appeals Council denied Joyce's request for review. Joyce appealed to the district court, and the parties consented to have the case decided by a magistrate. The magistrate granted summary judgment to the Commissioner and affirmed its denial of benefits. Joyce timely appealed.

On appeal, Joyce argues that (1) his impairments meet the listing criteria for "intellectual disability" and (2) the ALJ erred by failing to resolve an inconsistency between his functional limitations and the VE's testimony that he could perform the work of a "cashier" and "ticket seller."

II.

We give fresh review to the district court's decision, but must affirm the ALJ's denial of benefits if it applied the correct legal principles and its determination is supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan v. Comm'r of Soc Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992)). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

III.

Joyce qualifies for supplemental security income under the Social Security Act if he is disabled. 42 U.S.C. § 1382(1)(1). The Act defines disability as a physical or mental impairment that renders the claimant "unable to engage in any substantial gainful activity" and that can be expected to last for at least 12 months. *Id.* § 1382c(a)(3)(A).

ALJs follow a five-step sequence to determine if someone is disabled. The first two steps ask whether the claimant is either currently employed or lacks a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(i)–(ii). If the answer to either question is yes, the ALJ must deny benefits without further inquiry. *Id.* At step three, the ALJ determines whether the claimant automatically qualifies for benefits because his impairments match the criteria for a listed disability. *Id.* § 416.920(a)(4)(iii). If they do not, the ALJ must determine the claimant's "residual functional capacity (RFC)," which reflects what a claimant can do despite his limitations. *Id.* §§ 416.920(a)(4)(iv), 416.945. At steps four and five, the ALJ considers whether, given the claimant's RFC, he can perform either his past work or another job that exists in significant numbers in the national economy. *See id.* § 416.920(a)(4)(iv)–(v). If the claimant can perform such work, he is not disabled.

The disability listings referenced at step three describe conditions "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* § 416.925(a). Each listing describes an impairment in terms of its medical criteria—its signs, symptoms, and diagnostic indicators. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To be eligible for benefits at step three, the claimant must present evidence establishing that he meets all the listing criteria. *See id.*

A.

Joyce first argues that the ALJ erred in determining that he does not meet any of the listings at step three. In particular, Joyce claims he satisfies listing 12.05C, which covers "intellectual disability," formerly referred to as "mental retardation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The listing includes three requirements: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22; (2) a valid IQ score between 60 and 70; and (3) a physical or mental impairment "imposing an additional and significant work-related limitation of function." *Id.*

Joyce falls short of meeting 12.05C's listing criteria for three reasons.

*First*, the evidence does not support the onset of "significantly subaverage general intellectual functioning" before age 22. Joyce received no cognitive evaluations during his developmental years; Dr. Neal administered Joyce's sole IQ examination when he was 28. Joyce argues that his school records confirm that he manifested significantly subaverage intellectual functioning before age 22, but we disagree. Joyce's academic record is a "double-edged sword." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014). True, Joyce enrolled in some special-education classes in elementary school and high school and received failing grades in a handful of classes. But Joyce eventually earned his diploma and his transcript also shows a spattering of As and Bs, including an A in World History and B in Introduction to Computers. Joyce's mixed academic record undercuts his claim. *See Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012) (claimant's eighth-grade education and enrollment in special education classes did not evidence significantly below average intelligence); *Carmack v. Barnhart*, 147 F. App'x 557, 560 (6th Cir. 2005) (claimant's GED supported ALJ's denial of benefits under 12.05C); *Foster v. Halter*, 279 F.3d 348, 352, 354–55 (6th Cir. 2001) (claimant's

ninth-grade education and history of special education classes did not demonstrate developmental onset of intellectual disability despite four unsuccessful attempts at obtaining GED).

*Second,* Joyce did not display "deficits in adaptive functioning" before age 22. Adaptive functioning refers to the "claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007). The only evidence of Joyce's adaptive functioning during the relevant period are his high school records, which, as explained above, cut both ways. Joyce flags Dr. Neal's report, but Dr. Neal evaluated Joyce when he was 28, and to the extent Joyce's adult life evidences his adaptive functioning before age 22, it provides ample support for the ALJ's decision. Joyce's prior work—which a vocational expert described as "semiskilled,"—and his ability to pay bills, grocery shop, cook his own food, and interact with family, belie his claim that he exhibits adaptive-functioning deficits. *See, e.g.*, *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) (claimant's daily activities of cooking, caring for herself, doing household chores, managing finances, and taking public transportation did not establish adaptive-functioning limitations).

*Third*, Joyce failed to satisfy 12.05C's requirement of a "valid" IQ score between 60 and 70. To be valid, an IQ score must reflect the "plaintiff's true abilities, as demonstrated by his or her performance at work, household management and social functioning." *Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 B–C). The ALJ recognized that Dr. Neal's report "yielded a potentially listing level score," but ultimately found his findings inconsistent with the record as a whole and assigned the report "no weight." In light of Joyce's high-school education, work history, and

day-to-day activities, more than a scintilla of evidence supports the ALJ's rejection of Dr. Neal's report.

Joyce responds that his daily activities and work history fit the profile of someone with an IQ of 65, and accuses the ALJ of "misunderstanding . . . what the mildly retarded can and cannot do." In support, Joyce relies on *Brown v. Secretary of Health & Human Services*. The claimant in *Brown* worked as a truck driver and had a sixth-grade education. 948 F.2d at 270. He struggled with reading comprehension but could use public transit, visit friends, count change, and perform household chores. *Id.* We held that the ALJ erred in rejecting his listing-level IQ score because his "biography fit[] squarely within the . . . profile" of an individual with "mild mental retardation." *Id.* According to Joyce, his "work history and daily activities do not exceed those of the claimant in *Brown*."

We readily distinguish *Brown*. In determining that the claimant fit the profile of someone with MMR, this court quoted the *Diagnostic and Statistical Manual of Mental Disorders*, which predicts that someone with MMR will be capable of "acquir[ing] academic skills *up to* approximately *a sixth-grade level.*" *Brown*, 948 F.3d at 270 (emphasis added and removed) (quoting DSM-III-R § 317.00 (3d ed. 1987)). The claimant in *Brown* fit that description exactly, but Joyce does not. *Id.* at 270. Joyce's high school education places him well outside the DSM's diagnostic description of a person with MMR. *See id.* *Brown* supports the ALJ's rejection of Joyce's IQ score.

Joyce also faults the ALJ for failing to explicitly reference 12.05C in denying benefits at step three, but his complaint misses the mark. The ALJ recognized Joyce's listing-level score but found it inconsistent with the other evidence in the record, including Dr. Little's report and Joyce's educational background, work history, and adaptive functioning. Because rejection of

Joyce's IQ score itself defeats his 12.05C argument, the ALJ's factual findings support a denial of benefits at step three. *See, e.g.*, *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365–66 (6th Cir. 2014) (affirming ALJ's decision at step-three despite "sparse analysis" because "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion" (citations omitted)).

B.

Joyce next argues that the ALJ erred by failing to resolve an alleged inconsistency between his functional limitations and the VE's testimony. The ALJ found him limited to work that "involve[s] simple, one-, two-, three-step instructions," and asked the VE what jobs a person with Joyce's profile could perform. The VE identified "cashier" and "ticket seller." According to the Dictionary of Occupational Titles (DOT), however, both positions require a reasoning level of three, which the DOT defines as the ability "to carry out instructions furnished in written, oral, or diagrammatic form," and "[d]eal with problems involving several concrete variables in or from standardized situations." *See* DICOT 211.462-010 (G.P.O.), 1991 WL 671840 (4th ed. 1991). Joyce submits that a limitation to "simple, one-, two-, three-step instructions" is inconsistent with jobs requiring reasoning level three.

Social Security Ruling (SSR) 00-4p imposes on ALJs an affirmative duty to ask VEs if the evidence they provide "conflicts with the information provided in the DOT" and to resolve any "apparent conflicts." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). In this circuit, an ALJ satisfies her duty to inquire if she asks the VE whether the VE's testimony is consistent with the DOT and receives an affirmative response. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). Here, the ALJ neither asked about nor resolved the conflict that Joyce asserts. And although the ALJ's decision states that "the vocational expert's testimony is

consistent with the information contained in the [DOT]," nothing in the record suggests that the ALJ identified, let alone resolved, any discrepancy between Joyce's limitation to "one-, two-, three-step instructions," and the VE's testimony that he could perform jobs requiring a reasoning level of three. The ALJ procedurally erred.

The parties diverge over the proper remedy. Joyce contends that an ALJ's failure to inquire about and resolve a conflict between a simple-tasks limitation and the DOT reasoning levels necessarily requires remand. This view finds support in case law from the Eighth and Tenth Circuits. *See Swope v. Barnhart*, 436 F.3d 1023, 1026 (8th Cir. 2006) (expressing "serious doubts" that a person with an IQ of 80 could perform work requiring level three reasoning and remanding to the ALJ to resolve the conflict); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that a limitation to "simple and routine" tasks "seems inconsistent with the demand of level-three reasoning" (citations and quotation marks omitted)). In response, the Commissioner cites two non-precedential decisions from this circuit that point in the other direction. In *Monateri v. Commissioner of Social Security*, we declined to recognize a *per se* inconsistency between jobs requiring reasoning levels two or three and a limitation to simple work. 436 F. App'x 434, 446 (6th Cir. 2011). And we went even further in *Winslow v. Commissioner of Social Security*, holding that a discrepancy between a simple-tasks limitation and the DOT reasoning levels "is not the type of actual or apparent conflict that necessitates a resolution under SSR 00-4p." 566 F. App'x 418, 420 (6th Cir. 2014) (per curiam) (citations omitted). Because an ALJ's failure to inquire about a nonexistent conflict is necessarily harmless, following *Winslow* would dictate affirming the ALJ without further analysis.

We are not bound by the decision in *Winslow* and believe it requires clarification. *Winslow* cited two cases to support the proposition that there can never be a conflict between a

simple-tasks limitation and the DOT reasoning levels, but neither case supports such a bright-line rule. *See Monateri*, 436 F. App'x at 446; *Lindsley v.Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (holding that an ALJ is not required to perform a 00-4p inquiry simply because a VE testifies regarding a job without an exact analog in the DOT). *Winslow* also marks a sharp departure from the practice of our sister circuits, which leave open the possibility that jobs requiring reasoning level of two or three might conflict with a claimant's simple-task limitation. *See Zirnsak v. Colvin*, 777 F.3d 607, 618–19 (3d Cir. 2014) (recognizing potential conflict but affirming for harmless error); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (same); *Renfrow v. Astrue,* 496 F.3d 918, 921 (8th Cir. 2007) (same); *Henderson v. Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016) (remanding because of unresolved conflict between "one-to-two step instructions" and jobs requiring reasoning level two); *Zavalin v. Colvin*, 778 F.3d 842, 846–47 (9th Cir. 2015) (similar); *Krueger v. Astrue*, 337 F. App'x 758, 762 (10th Cir. 2009) (similar). These courts generally perform harmless-error analysis on a case-by-case basis, looking to whether the DOT reasoning levels are inconsistent with a particular claimant's actual limitations. *See generally Zirnsak*, 777 F.3d at 618–19.

We accordingly reject *Winslow*'s bright-line rule and leave open the possibility that an ALJ might reversibly err by failing to inquire about or resolve a conflict between the DOT reasoning levels and a simple-tasks limitation. Nonetheless, we affirm here because the ALJ's failure to inquire about the potential conflict was harmless. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013). Joyce does not argue that he is incapable of performing the work of a cashier or ticket seller, perhaps because the evidence suggests that he can. Joyce earned his GED, admits that he can count change, and worked for 16 months as a gas station attendant following his claimed disability period. Moreover, Joyce performed work during his

claimed disability period that the DOT classifies as "semiskilled," whereas cashier and ticket seller are "unskilled" positions. Accordingly, substantial evidence supports the ALJ's finding that Joyce can perform the work of a cashier or ticket seller.

For these reasons, we AFFIRM the district court's judgment.