**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2248**

SUSAN E. KELLER,

                Plaintiff – Appellant,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant – Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Frank D. Whitney, Chief District Judge.  (5:17-cv-00001-FDW)

Argued:  October 31, 2018                    Decided:  November 29, 2018

Before KING, DUNCAN, and WYNN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion. Judge Wynn wrote a concurring opinion.

**ARGUED:**  Dana Wayne Duncan, DUNCAN DISABILITY LAW, SC, Nekoosa, Wisconsin, for Appellant.  Gabriel Robert Deadwyler, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.  **ON BRIEF:** R. Andrew Murray, United States Attorney, Charlotte, North Carolina, Gill B. Beck, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina; Jill Reeder, Office of General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Susan E. Keller appeals from the district court's judgment affirming the Acting Commissioner of Social Security's (the "Commissioner") denial of Keller's supplemental security income claim. On appeal, Keller contends that the administrative law judge (the "ALJ") that rendered the Commissioner's final decision erred in three ways. As explained below, we agree with the court that Keller's first and second challenges to the ALJ's decision — which concern the ALJ's credibility and residual functional capacity findings, respectively — are without merit. We disagree, however, with the court's rejection of Keller's third challenge, relating to the ALJ's reliance on the testimony of the vocational expert (the "VE") to deny her claim. We therefore affirm in part, vacate in part, and remand for further administrative proceedings.

I.

In reviewing an ALJ's denial of a supplemental security income claim, we will uphold the ALJ's decision when she "has applied [the] correct legal standards and [her] factual findings are supported by substantial evidence." *See Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (internal quotation marks omitted). We have explained that "[s]ubstantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *See Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015); *see also Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (describing substantial evidence as "more than a mere scintilla of evidence but . . . less than a preponderance" (internal quotation marks omitted)). In performing a substantial

2

evidence review, "we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." *See Hancock*, 667 F.3d at 472 (alteration and internal quotation marks omitted). That is, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.* (alteration and internal quotation marks omitted).

## II.

In these proceedings, Keller presents three challenges to the ALJ's decision. She first asserts that the ALJ erred in finding that Keller's statements about her symptoms and limitations were not entirely credible. Second, Keller contends that the ALJ's residual functional capacity finding does not fully account for her mental impairments and that the ALJ otherwise failed to adequately explain how she arrived at the mental restrictions contained in that finding, such as Keller's limitation to work involving, inter alia, "short and simple instructions."[1] Third, Keller maintains that the ALJ did not identify and resolve an apparent conflict between the VE's testimony at the administrative hearing and the Dictionary of Occupational Titles (4th ed. 1991) (the "DOT").[2]

---

[1] A claimant's residual functional capacity is "the most" that the claimant "can still do despite [her] limitations." *See* 20 C.F.R. § 416.945(a)(1).

[2] The DOT is a "Social Security Administration resource[] that list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." *See Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015). The Social Security Administration also uses a companion resource to the DOT, entitled (Continued)

3

Having carefully considered the administrative record, the district court's order, and the parties' submissions to this Court, we are satisfied to reject Keller's first and second challenges to the ALJ's decision and affirm on the district court's reasoning. *See Keller v. Berryhill*, No. 5:17-cv-00001-FDW (W.D.N.C. Aug. 28, 2017). At bottom, we agree with the court that the ALJ's credibility analysis is supported by substantial evidence and that the ALJ sufficiently and precisely accounted for Keller's mental impairments when crafting the residual functional capacity finding. With respect to Keller's third challenge to the ALJ's decision, however, we conclude that the ALJ erred by failing to identify and resolve an apparent conflict between the VE's testimony and the DOT. We remand for further administrative proceedings on that basis.

## III.

### A.

Before addressing in detail Keller's third assignment of error, we review some necessary background information about the five-step sequential process used by an ALJ to evaluate a supplemental security income claim like Keller's. We have previously described that sequential process as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and

---

Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (1993), that explains additional physical and environmental demands for the occupations listed in the DOT.

meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

*Radford v. Colvin*, 734 F.3d 288, 290-91 (4th Cir. 2013) (internal quotation marks omitted). Importantly, the claimant bears the burden of proof for only the first four steps. *See Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). At the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. *See id.*; *see also* 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). Here, Keller disputes the sufficiency of the Commissioner's evidence at the fifth step.

B.

To decide whether the Commissioner has met her fifth-step burden, the ALJ looks "primarily" to the DOT. *See Pearson*, 810 F.3d at 207. The ALJ may also, however, rely on VE opinion evidence — commonly provided by way of testimony at the ALJ hearing — "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* (internal quotation marks omitted).

At times, a VE's testimony that a claimant can perform a certain occupation may conflict, or seem to conflict, with the DOT's description of the physical or mental requirements for that occupation. In those circumstances, the ALJ has the responsibility to identify and resolve any such conflict. *See* Social Security Ruling 00-4p, 2000 WL

5

1898704, at *4 (Dec. 4, 2000).[3] Social Security Ruling 00-4p provides that the ALJ has "an affirmative responsibility to ask [the VE] about any possible conflict" between the VE's testimony and the DOT. *Id.* If there appears to be a conflict, the ALJ must "obtain a reasonable explanation [from the VE] for th[at] apparent conflict." *Id.* Ruling 00-4p further requires that the ALJ explain her resolution of an apparent conflict before relying on the VE's testimony to support the denial of a benefits claim. *Id.*

In our *Pearson* decision, we confirmed that Ruling 00-4p requires an ALJ to independently identify "apparent" conflicts between a VE's testimony and the DOT. *See* 810 F.3d at 209. We explained that an apparent conflict exists when the VE's testimony "seems to, but does not necessarily, conflict with the [DOT]." *Id.* We also specified that, "if the ALJ does not elicit [an] explanation [for an apparent conflict], then the [VE's] testimony cannot provide substantial evidence to support the ALJ's decision." *Id.*; *see also Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) (explaining that, if Commissioner relies only on VE testimony at fifth step, and when an unresolved apparent conflict exists between that testimony and the DOT, then Commissioner has not met her burden of proof).

---

[3] We have recognized that "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act" and "are entitled to deference unless they are clearly erroneous or inconsistent with the law." *See Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

6

In these proceedings, Keller contends that the ALJ's finding at the fifth step — that she can perform other work in the national economy — is not supported by substantial evidence, because that finding relies on VE testimony that apparently conflicts with the DOT and the ALJ never resolved that apparent conflict. More specifically, Keller explains that the ALJ restricted her to work involving "short and simple instructions" and that, despite that limitation, the VE testified at the administrative hearing before the ALJ that Keller can perform such occupations as document preparer, order clerk, and charge account clerk. According to Keller, however, the VE's testimony apparently conflicts with the DOT's descriptions of those three occupations because, under the DOT, those occupations require the reasoning ability to carry out job instructions that are more than just short and simple.

In support of her contention, Keller relies on the DOT's Reasoning Development scale. That scale has six levels — Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. *See* DOT, App. C, 1991 WL 688702. The DOT assigns a Reasoning Development Level to each occupation identified therein.

Keller correctly observes that the three occupations named by the VE in this case are described in the DOT as requiring a Reasoning Development Level 3. *See* DOT 249.587-018, 1991 WL 672349 (document preparer); DOT 209.567-014, 1991 WL 671794 (order clerk); DOT 205.367-014, 1991 WL 671715 (charge account clerk). The DOT defines Reasoning Development Level 3 as:

> [The abilities to] [a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[, and] [d]eal with problems involving several concrete variables in or from standardized situations.

*See* DOT, App. C, 1991 WL 688702.

Keller contends that her restriction by the ALJ to short and simple instructions is inconsistent with occupations requiring a Reasoning Development Level 3. Rather, she asserts that a short and simple instructions limitation is more consistent with jobs requiring a Reasoning Development Level 1, which the DOT defines as:

> [The abilities to] [a]pply commonsense understanding to carry out *simple* one- or two-step instructions[, and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*See* DOT, App. C, 1991 WL 688702 (emphasis added).

We agree with Keller that a limitation to short and simple instructions appears inconsistent with jobs that require a Reasoning Development Level 3. In reaching this conclusion, we consider not only the DOT's definitions of Levels 1 and 3, but also the DOT's definition of Level 2. Reasoning Development Level 2 — which is more demanding than Level 1 but less demanding than Level 3 — is defined as the ability to "[a]pply commonsense understanding to carry out *detailed but uninvolved* written or oral instructions." *See* DOT, App. C, 1991 WL 688702 (emphasis added).

A limitation to short and simple instructions appears more consistent with Reasoning Development Level 1 or Level 2 than with Level 3. *Compare Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (concluding that limitation to simple tasks was "at odds with Level 3's requirements" and more consistent with Level 2's requirements),

8

*and Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (explaining that restriction to simple instructions is consistent with Level 2), *with Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (suggesting that simple instructions limitation is consistent with Level 1).[4] Indeed, it seems that such a limitation falls somewhere between Levels 1 and 2. That is, a short and simple instructions restriction shares the word "simple" with the Level 1 definition but could permit instructions of more than two steps. On the other hand, it is not entirely clear to us that a person limited to short and simple instructions can also carry out Level 2 jobs that include "detailed but uninvolved" instructions. Because Level 3 is more demanding than Level 2 by the very nature of the Reasoning Development scale, it appears that Level 3 jobs require more than the ability to carry out short and simple instructions. That determination is also supported by the fact that — unlike the definitions of Levels 1 and 2 — Level 3's definition places no explicit limitation on the complexity of the instructions to be carried out; instead, Level 3 describes only the form of those instructions.[5] We therefore conclude that an apparent conflict exists between a

---

[4] Several other courts of appeals have relied on precedent addressing a simple tasks limitation when considering a simple instructions limitation. *See Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017); *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 435-36 (6th Cir. 2016) (No. 16-5560); *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (No. 16-1007). We conclude that it is appropriate to do the same in this case.

[5] Although the DOT's definition of Reasoning Development Level 3 describes only the form of the instructions to be carried out, the Ninth Circuit has determined that one of those forms could be particularly "difficult for a person limited to simple . . . tasks to follow" because diagrammatic instructions "can be abstract." *See Zavalin*, 778 F.3d at 847 (internal quotation marks omitted).

limitation to short and simple instructions and Reasoning Development Level 3 occupations.

Two other courts of appeals have reached the same conclusion we reach today. In particular, the Ninth and Tenth Circuits have determined that an apparent conflict exists when a VE testifies that a claimant limited to simple instructions and tasks can perform Reasoning Development Level 3 jobs. *See Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). Additionally, the Eighth Circuit has concluded that a limitation to "simple, concrete instructions" is "arguably inconsistent" with Level 3 jobs. *See Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005); *see also Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) (explaining that "tension exists between" limitation to "simple, concrete instructions" and Level 3 jobs).[6] *But see Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007) (concluding that no conflict existed between no "complex technical work" restriction and Level 3 jobs).

In addition to garnering support from our sister circuits, our determination is consistent with an internal Social Security Administration memorandum contained in the administrative record. In that December 2009 memorandum, the Social Security Administration's Director for the Division of Field Procedures advises Regional Chief ALJs that an apparent conflict exists between a limitation to simple tasks and Reasoning

---

[6] In an unpublished decision, the Sixth Circuit has "le[ft] open the possibility that jobs requiring reasoning level of . . . three might conflict with a claimant's simple-task limitation." *See Joyce*, 662 F. App'x at 436.

10

Development Level 3 jobs. *See* A.R. 386-88.[7] The 2009 memorandum therefore instructs administrative adjudicators to consider that apparent conflict in deciding benefits claims.

We are thus satisfied that the ALJ erred by failing to identify and resolve an apparent conflict between the VE's testimony that Keller could perform the occupations of document preparer, order clerk, and charge account clerk, and the DOT's reasoning development requirements for those occupations. Our conclusion does not mean that an actual conflict exists between a simple instructions limitation and occupations requiring a Reasoning Development Level 3. Nor have we determined that Keller is unable to actually perform the identified occupations. We decide only that an apparent conflict exists between the VE's testimony and the DOT, and that the ALJ was obliged to resolve that apparent conflict with the VE's help. *See Pearson*, 810 F.3d at 211. Because the ALJ failed to do so, however, the VE's testimony alone "cannot provide substantial evidence" supporting the ALJ's fifth-step finding. *Id.* at 209.

## D.

Finally, we consider whether the ALJ's error in this case can be deemed harmless. We are aware that some of our sister circuits have applied harmless error analysis when an ALJ has relied on VE testimony that conflicts with the DOT. *See Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 436-37 (6th Cir. 2016) (No. 16-5560); *Zirnsak v. Colvin*,

---

[7] "A.R." refers to the Administrative Record filed by the Commissioner in these proceedings.

777 F.3d 607, 617-19 (3d Cir. 2014); *cf. Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (applying harmless error doctrine when ALJ failed to inquire whether VE's testimony conflicted with DOT). In *Pearson*, however, we neither considered nor resolved the issue of whether the harmless error doctrine applies when an ALJ denies a benefits claim by relying on VE testimony that apparently conflicts with the DOT.

As a general proposition, we apply the harmless error doctrine in reviewing a decision of the Commissioner denying a benefits claim. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). We will not affirm for harmless error, however, "[w]here an insufficient record precludes a determination that substantial evidence support[s] the ALJ's denial of benefits." *Id.* And, in *Pearson*, we announced that the administrative record is insufficient when it contains an unresolved conflict between a VE's testimony and the DOT. *See* 810 F.3d at 210.

Nevertheless — assuming that the harmless error doctrine applies in these circumstances — we are yet satisfied that a remand is required, for two reasons. First, the Commissioner waived any harmless error argument by failing to present it in her submission to this Court. *See United States v. Hall*, 858 F.3d 254, 280 n.8 (4th Cir. 2017) (explaining that government may waive harmless error argument) (citing Fed. R. App. P. 28(b)). Second, notwithstanding the Commissioner's waiver, we are unable to conclude that the ALJ's error is harmless in this case. *See United States v. Holness*, 706 F.3d 579, 592 (4th Cir. 2013) (identifying factors that court should consider before performing harmlessness analysis sua sponte). That is, the administrative record does not clearly demonstrate that Keller can actually perform the occupations identified by the VE and

12

relied on by the ALJ at the fifth step. *See Zirnsak*, 777 F.3d at 618-19 (concluding that failure to resolve any conflict was harmless because claimant could actually perform jobs identified by VE). We are therefore constrained to vacate and remand with regard to Keller's third assignment of error.

IV.

Pursuant to the foregoing, we affirm in part, vacate in part, and remand for the district court to remand this matter to the Commissioner for such other and further proceedings as may be appropriate.

*AFFIRMED IN PART,*
*VACATED IN PART, AND REMANDED*

WYNN, Circuit Judge, concurring:

I concur in the majority opinion but write separately to note that the ALJ additionally erred in its reliance on Keller's failure to follow prescribed treatment as part of the credibility finding.

To be eligible for benefits, claimants must comply with medically prescribed treatment. SSR 82–59, 1982 WL 31384 (1982). A claimant's alleged pain "may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and *there are no good reasons for this failure*." SSR 96–7p, 1996 WL 374186, at \*7 (1996) (emphasis added); *see also Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. 2015) (citing SSR 96–7p and indicating same). ALJs must consider explanations provided either by claimants or other information in the record that may account for noncompliance. SSR 96–7p. In its decision, the ALJ referenced three indicators of noncompliance: contrary to physician instructions, (1) Keller failed to obtain physical therapy; (2) she did not wear her Vertalign brace; and (3) she rarely utilized her Orthofix bone stimulator. A.R. 53–54.

First, with respect to physical therapy, although the ALJ mentioned Keller's reference to financial difficulties as a potential reason for her noncompliance with physical therapy, the ALJ's decision did not actually consider whether those financial difficulties excused Keller from noncompliance. This Court has held, however, that "a claimant may not be penalized for failing to seek treatment she cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Under SSR 96–7p and *Lovejoy*, the ALJ was required to inquire into Keller's inability to pay before relying on her noncompliance

14

in the credibility finding. It may well be that Keller's testimony may not be found fully credible regarding her inability to pay, but the ALJ erred by failing to evaluate Keller's inability to pay on the record, in order to gauge whether this justified noncompliance.

Second, with respect to Keller's noncompliance with her brace and bone stimulator, the record does not indicate, and the ALJ did not inquire, as to why Keller refused to utilize them. We have not previously addressed the scope of ALJs' affirmative duty to elicit testimony on all noncompliant behaviors before relying on them in the credibility analysis. Other circuits, however, have clarified that "unexplained instances" of noncompliance do not alone constitute substantial evidence supporting a credibility finding. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017); *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (concluding that ALJs "must not draw any inferences" from noncompliance without "explor[ing] the claimant's explanations as to the lack of medical care."); *Robinson v. Barnhart*, 366 F.3d 1078, 1083–84 (10th Cir. 2004) (holding similarly). Other circuits have held that ALJs have an affirmative duty to inquire about noncompliance where the ALJ decision is based *primarily* on the claimant's noncompliance. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

Although we have not yet ruled on this question, I believe on remand, the ALJ should address on the record, first, whether Keller's inability to pay for physical therapy excuses her noncompliance under *Lovejoy*, and, second, the reasons behind Keller's noncompliance with the brace and bone stimulator.