Frank BROWN, Plaintiff–Appellant,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,
Defendant–Appellee.

No. 91–3091.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 20, 1991.

Decided Nov. 1, 1991.

John A. Cervay (argued and briefed), Dayton, Ohio, for plaintiff-appellant.

Leslye E. Jones (argued and briefed), John A. Morrissey, Dept. of Health and Human Services, Office of the General Counsel, Region V, Chicago, Ill., Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, for defendant-appellee.

Before MERRITT, Chief Judge, KENNEDY, Circuit Judge, HARVEY, District Judge.*

MERRITT, Chief Judge.

Plaintiff Frank Brown appeals from the District Court's decision that plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 405(g). Specifically, plaintiff challenges the lower court's finding that his full scale I.Q. score of 68 was not valid for purposes of qualifying him for benefits pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (C). For the reasons set forth below, we REVERSE and REMAND for further proceedings.

Section 12.05 C of Appendix One to the Secretary's regulations governing disability determinations sets forth the standard plaintiff must meet to be eligible for benefits when plaintiff's disability is based, in part or in whole, upon a claim of mental retardation. That section provides that the listed impairment of "mental retardation" meets the required level of severity when the claimant has "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." Section 12.00 D of the Appendix provides that "where more than one IQ is customarily derived from the test administered ... *the lowest of these is used in conjunction with listing 12.05,*" (emphasis added). "[I]t must be noted that on the [Wechsler Adult Intelligence Scale (WAIS)], for example, IQs of 70 and below are characteristic of approximately the lowest 2 percent of the general population." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 D.

Section 12.00 D requires that an I.Q. score be valid. The I.Q. score must reflect the plaintiff's true abilities as demonstrated by his or her performance at work, household management and social functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 B–C. The regulations do not limit the question of validity to test results alone in isolation from other factors. In assessing the validity of a claimant's I.Q., "[i]nformation from both medical and nonmedical sources may be used to obtain detailed descriptions of the individual's activities of daily living; social functioning; concentration, persistance and pace; or ability to tolerate increased mental demands (stress)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 D.

On appeal, Mr. Brown challenges the District Court's finding that there is substantial evidence to support the ALJ's rejection of Mr. Brown's I.Q. scores. Claimant's full-scale I.Q. of 68 places him within the range of Listing 12.05 C. The Secretary, however, argues that Mr. Brown's I.Q. scores should be deemed in-

* The Honorable James Harvey, United States District Judge for the Eastern District of Michigan, sitting by designation.

valid. The Secretary claims that a full-scale I.Q. score of 68 is inconsistent with Mr. Brown's functional abilities. In support of his argument, the Secretary points to the following facts: Mr. Brown is able to use public transit; he has a driver's license; he visits friends; he is able to make change at a grocery store; he can do his own laundry and clean his room;[1] he completed the sixth grade;[2] he has a limited level of reading comprehension (Mr. Brown stated that he can follow a road atlas, and a friend testified she had seen him reading a newspaper);[3] and as a truck driver, Mr. Brown recorded mileage, the hours he worked, and the places he drove.

We do not deem these facts to be inconsistent with a valid test I.Q. of 68, and the Secretary offers no empirical evidence in support of this conclusion.

■ The regulations state that "[i]n cases involving impaired intellectual functioning, a standardized intelligence test, e.g., the WAIS, should be administered and interpreted by a psychologist or psychiatrist qualified by training and experience to perform such an evaluation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 D. Claimant complied with the regulations. The regulations require only that the lowest I.Q. score be used in conjunction with Listing 12.05 C. This was done. (In fact, two of claimant's three scores from the WAIS–Revised exam fall within the range of scores signifying mental retardation under the regulations.) The regulations specify that I.Q. scores ranging from "60 through 70" qualify an individual as mentally retarded. The *Diagnostic and Statistical Manual of Mental Disorders* (3d ed. 1987) ("DSM–III–R") distinguishes between four degrees of severity of intellectual impairment: mild, moderate, severe, and profound. I.Q. levels in the range of "50–55 to approx. 70" are labeled as "Mild Mental Retardation." DSM–III–R describes mild mental retardation thus:

Mild Mental Retardation is roughly equivalent to what used to be referred to as the educational category of "educable." This group constitutes the largest segment of those with the disorder— about 85%. People with this level of Mental Retardation typically develop social and communication skills during the preschool years (ages 0–5), have minimal impairment in sensorimotor areas, and often are not distinguishable from normal children until a later age. By their late teens *they can acquire academic skills up to approximately sixth-grade level; during their adult years, they usually achieve social and vocational skills adequate for minimum self-support,* but may need guidance and assistance when under unusual social or economic stress. At the present time, *virtually all people with Mild Mental Retardation can live successfully in the community, independently* or in supervised apartments or group homes (unless there is an associated disorder that makes this impossible).

DSM–III–R § 317.00 (emphasis added). The Secretary, in promulgating Listing 12.05 C, expressly singled out individuals with Mild Mental Retardation for special treatment in determining entitlements to disability benefits. Mr. Brown's I.Q. scores indicate Mild Mental Retardation. Furthermore, Mr. Brown's biography fits squarely within the DSM–III–R profile of a mildly retarded individual. We also note that the Secretary could have administered a second I.Q. test were he certain of the invalidity of Mr. Brown's scores. He did not.

For these reasons, we conclude that there is not substantial evidence in the record to support the Secretary's rejection of claimant's I.Q. scores. Consequently, we hold that Mr. Brown's full-scale I.Q. score of 68 is valid. Our decision, however, does not conclude the matter.

1. We note that several physicians who examined Mr. Brown commented on his strong body odor, and surmised that he was less than diligent in cleaning his clothes and maintaining personal hygiene.

2. A Wide Range Achievement Test–Revised revealed, however, that he had reading and arithmetic skills equivalent to a third grade education.

3. The friend did not say what Mr. Brown read in the newspaper, or what newspaper Mr. Brown read. According to Dr. Payne, claimant could not name the President's predecessor, nor the Governor nor Mayor.

The record reflects that claimant suffered from alcohol dependency. *See* reports by Dr. Derrick Phillips, Dr. Amita Oza, Dr. Tyrone Paine. Claimant told Dr. Payne that he formerly drank "a case of beer per day" plus "a little bourbon." Dr. Oza reported that the heavy alcohol ingestion had continued for thirty years. The Administrative Law Judge indicated that Mr. Brown gave up drinking one month prior to Dr. Payne's psychological evaluation. At oral argument, the Secretary argued that claimant's low I.Q. scores could have been caused, in part, by claimant's drinking as an adult. If the Secretary's argument is correct, then claimant would not meet Listing 12.05 C which defines mental retardation to be "a significantly subaverage general intellectual functioning with deficits in adaptive behavior *initially manifested during the developmental period* (before age 22)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. (emphasis added).

The Secretary, ALJ, and District Court did not address the issue of whether claimant's mental impairment was "manifested during [claimant's] developmental period" or rather is a partial consequence of claimant's history of heavy alcohol use after the age of twenty-two. Consequently, we remand the case to the Secretary to resolve this undecided question. Should the Secretary find that Mr. Brown's mental retardation manifested itself during his developmental period, he must then determine whether claimant's physical impairments "impos[e] additional and significant work-related limitation of function," pursuant to Listing 12.05 C.

The District Court's decision that Mr. Brown's I.Q. scores are invalid is unsupported by substantial evidence. Accordingly, we REVERSE the decision and REMAND to the District Court for remand to the Secretary for further administrative proceedings consistent with this opinion.