5 F.3d 546
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Darrell McKOWN, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-7000.
 United States Court of Appeals, Tenth Circuit.
 Aug. 26, 1993.
 ORDER AND JUDGMENT[1]
 
 1
 Before BALDOCK and KELLY, Circuit Judges, and CAUTHRON,** District Judge.[2]
 
 
 2
 Plaintiff appeals from a district court order affirming the decision of the Secretary to deny his request for social security benefits. We review the Secretary's determination in light of the whole record "to determine whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir.1991).
 
 
 3
 Plaintiff claims a disability based on mild mental retardation, as evidenced by standardized intelligence testing, coupled with physical limitations and pain arising from various injuries suffered in the past several years. The administrative law judge (ALJ) considered these allegations and found plaintiff not disabled under the Secretary's five-step evaluative sequence. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988)(describing steps in detail). Specifically, the ALJ found plaintiff (1)was not engaged in substantial gainful activity; (2)had a severe impairment; (3)did not, however, have a listed impairment; (4)could not perform past relevant work; but (5)retained the residual functional capacity to perform most medium, light, and sedentary work, enabling him to qualify for jobs confirmed by a vocational expert to exist in sufficient numbers to preclude disability. See App. II at 22, 66-70. For the reasons to follow, we reverse and remand for additional, explicit findings at step three, with further development of the pertinent facts should the Secretary deem that necessary as well.
 
 
 4
 We emphasize at the outset the limited nature of our disagreement with the ALJ's lengthy and, in all but one respect, meticulous analysis of this case. Aside from the step-three problem discussed herein, the record contains substantial evidence to support the ALJ's conclusions throughout the rest of the evaluative sequence. However, because a conclusive determination of disability at any step is dispositive regardless of the different standards involved in subsequent steps, see Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.1992); 20 C.F.R. 404.1520(a), we cannot rely on the ALJ's finding of nondisability at step five to disregard a potentially dispositive issue favorable to the plaintiff at step three, see, e.g., Rainey v. Heckler, 770 F.2d 408, 410 & n. 4 (4th Cir.1984)(step five determination reversed because of error at step three); see also Davis v. Shalala, 985 F.2d 528, 530-31, 534-35 (11th Cir.1993)(step four determination reversed because of error at step three).
 
 
 5
 The listing for mental retardation sets out four distinct ways to establish disability. See 20 C.F.R. Part 404, Subpt. P, App. 1, 12.05A-D. Our focus here is on 12.05C, which addresses mild mental retardation and provides that disability is shown by satisfying two conditions: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." The ALJ did not address this regulation directly in his discussion of the evidence at step three,[3] though it applies to much of what he said. We consider the ALJ's analysis and the record pertinent to both conditions, in turn, below.
 
 
 6
 At the Secretary's direction, Dr. Elizabeth A. Rasmussen tested plaintiff's cognitive functioning and prepared a report. Using the Wechsler Adult Intelligence Scale-Revised, Dr. Rasmussen determined plaintiff's full scale IQ to be 68. App. II at 302. The reliability and validity of this score was supported by inclusion of subtest scores, see Soc. Sec. Rul. 82-54, Social Security Administration Rulings 1975-82, at 786 (1983), as well as by Dr. Rasmussen's independent testing of plaintiff's reading performance on the Wide Range Achievement Test-Revised, which reflected a fourth grade reading level. Id. at 302. Dr. Rasmussen expressly found these measures to be "representative of [plaintiff's] current functioning." Id. at 301-02. Absent probative countervailing evidence, Dr. Rasmussen's findings would clearly establish the mental retardation component of 12.05C.
 
 
 7
 The ALJ appeared to disregard these objective results primarily because plaintiff "has graduated from high school and spent about two semesters in college." App. II at 68. However, while plaintiff affirmed his graduation from high school, he also testified that in his junior and senior years he took ungraded vo-tech electrical training, which he has not used since. Id. at 87-88, 107, 116-17. Furthermore, he stated that he did not pass a single course in the two semesters he tried at junior college. Id. at 117. Significantly, Dr. Rasmussen noted plaintiff's educational history, but nevertheless concluded that the IQ results were a valid measure of plaintiff's cognitive aptitudes. Id. at 301-02. Without supporting evidence to the contrary, the ALJ cannot simply substitute his own "medical expertise" for that of a qualified expert. Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir.1987); see also Twin Pines Coal Co. v. United States Dep't of Labor, 854 F.2d 1212, 1218 (10th Cir.1988). This is particularly true here, as the regulations specify "[t]he [IQ] test should be administered and interpreted by a psychologist or psychiatrist qualified by training and experience to perform such an evaluation." 12.00(D); see, e.g., Nieves v. Secretary of Health & Human Servs., 775 F.2d 12, 14 (1st Cir.1985)(Secretary erroneously discredited IQ scores supported by only medical evidence in record).
 
 
 8
 The same conclusion is true of the various daily activities the ALJ evidently considered inconsistent with plaintiff's IQ scores. See App. II at 68-69. Such basic matters as self-care and interpersonal cooperation are fully commensurate with the mild mental retardation addressed by 12.05C.[4] See Brown v. Secretary of Health & Human Servs., 948 F.2d 268, 270 (6th Cir.1991)(quoting entry for mild mental retardation in Diagnostic and Statistical Manual of Mental Disorders (3d ed.1987) and finding condition consistent with daily activities more extensive than plaintiff's)[5]; see also Nieves, 775 F.2d at 14 (prior work as seamstress consistent with "mild form of retardation" contemplated in 12.05C, which, unlike 12.05A or 12.05B (IQ under 60), requires an additional impairment to establish disability). Again, Dr. Rasmussen knew of plaintiff's daily activities, but they did not alter her opinion regarding the validity of the test results. See App. II at 301-02.
 
 
 9
 Before addressing the second condition imposed in 12.05C, we emphasize that the ALJ need not simply accept IQ results reported by an expert. By its own terms, 12.05C requires a valid IQ score, and "[t]he regulations do not limit the question of validity to test results alone in isolation from other factors." Brown, 948 F.2d at 269. Accordingly, the ALJ may discount an IQ score as invalid for a variety of reasons, so long as there is substantial evidence in the record to support his conclusion. See, e.g., Muse v. Sullivan, 925 F.2d 785, 788-90 (5th Cir.1991); Hutsell v. Sullivan, 892 F.2d 747, 750-51 & n.4 (8th Cir.1989); Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir.1986). Here, however, the educational background and life activities cited by the ALJ, which Dr. Rasmussen herself considered, are not sufficient to contradict her otherwise uncontraverted opinion of the validity of the scores obtained. We note that the ALJ could have ordered readministration of the IQ test, or obtained a second qualified opinion regarding the validity of the existing results, but elected to decide the matter on the record developed for the Secretary by Dr. Rasmussen. See Brown, 948 F.2d at 270. On remand, the Secretary may wish to consider whether one or both of these avenues should be pursued.
 
 
 10
 Once mental retardation is demonstrated, the additional impairment required to meet the 12.05C listing must be "more than slight or minimal," but need not be "severe" in step two terms, much less "disabling" under step five standards. See, e.g., Davis, 985 F.2d at 534-35; Fanning v. Bowen, 827 F.2d 631, 633 & n.3 (9th Cir.1987); Nieves, 775 F.2d at 14. Because of the manner in which the ALJ proceeded, we have no reviewable finding on this important issue. After passing over step three for the reasons discussed above, the ALJ determined (1)that plaintiff was unable to perform a whole category of work (heavy)--which included his prior occupation of driller's helper--and would also require certain restrictions on lighter work, but (2)that plaintiff was still able to perform a sufficient number of jobs to preclude a finding of disability at step five. See App. II at 69-70. Neither of these determinations is dispositive of the step-three issue. The first may reflect significant work-related impairment, but it does not adequately assess the degree of limitation attributable solely to the nonretardation component of plaintiff's condition. The second relates to a (step five) standard far more exclusive than that appropriate to 12.05C under the authorities cited above. In short, "[w]hether the ALJ would have considered [plaintiff's other impairments] to have more than a slight or minimal effect, within the meaning of our holding today, is unclear." Fanning, 827 F.2d at 633-34.
 
 
 11
 Accordingly, we remand this case to the Secretary for further consideration under the standards appropriate to 12.05C. See id. In this regard, we note that the Secretary may wish to develop the record regarding the emergence of plaintiff's intellectual limitations, as the listings for mental retardation apply only to conditions "initially manifested during the developmental period (before age 22)," 12.05. See, e.g., Brown, 948 F.2d at 271. But see Gant v. Sullivan, 773 F.Supp. 376, 381 (S.D. Fla.1991)(noting circuit courts' liberal construction of 12.05's early manifestation requirement, under which "claimant is not required to affirmatively prove that he was mentally retarded prior to reaching the age of twenty two [so long as] there was no evidence that claimant's IQ had changed").
 
 
 12
 The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the cause is REMANDED to the Secretary for further proceedings consistent with this order and judgment.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 **
 Honorable Robin J. Cauthron, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [3]
 Earlier in his decision, the ALJ quoted verbatim all of 12.05, along with some twenty pages of other material generally related to pain and mental disorders, see App. II at 28-50 (12.05 quoted at 48-49), but this regulation was never mentioned again when the ALJ recounted the evidence, id. at 50-65, and went through the sequential analysis, id. at 66-70. On the Psychiatric Review Technique Form, the ALJ marked "absent" opposite the 12.05C criteria, without further comment. Id. at 72
 
 
 [4]
 Citing Soc. Sec. Rul. 82-54, the Secretary asserts "mental retardation must be manifested by severe mental and social incapacity as evidenced by marked dependence upon others for personal needs (bathing, washing, dressing), inability to understand the spoken word, inability to avoid physical danger (fire, automobiles, etc.), inability to follow simple directions, and an inability to read, write and perform simple calculations." Brief for appellee at 17-18. This passage, a quote from the ruling, is actually addressed to 12.05A, which deals with mental retardation so severe that standardized test results (and additional impairments) are not required. See Social Security Administration Rulings 1975-82, at 783-84. We are concerned here, in contrast, with a psychometrically diagnosed and less severe form of retardation that, when coupled with an additional impairment, may satisfy the listing in 12.05C
 
 
 [5]
 Unlike the claimant in Brown, plaintiff cannot make change, does not receive or visit friends, and does not do his own laundry and cleaning. See App. II at 100-09