NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0596n.06

No. 17-2408

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| KIMBERLY QUISENBERRY, | ) | **FILED** |
|  | ) | Nov 29, 2018 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | EASTERN DISTRICT OF MICHIGAN |
|  | ) |  |
| Defendant-Appellee. | ) |  |

BEFORE:     MERRITT, DAUGHTREY, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Due to numerous physical ailments and mental deficiencies, plaintiff Kimberly Quisenberry has been unable to perform her previous work as a nurse's assistant and caregiver since May 28, 2009.  She applied for Social Security disability benefits and supplemental security income benefits, but an administrative law judge determined that she still could perform a significant number of other jobs in the national and regional economies.  The district court concluded that substantial evidence in the record supported that decision, but Quisenberry contends that the administrative law judge erred:  (1) in concluding that her medical problems and intellectual shortcomings were not severe enough to meet or equal an impairment listed in the applicable regulations; (2) in determining her residual functional capacity; and (3) in posing an incomplete hypothetical question to the vocational expert.

Our review of such contentions is extremely limited.  If substantial evidence in the record supports the findings and conclusions of the administrative law judge, we may not disturb that

decision, even if substantial evidence would also support the opposite conclusion. Constrained as we are by that established standard of review, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In August and September 2009, Kimberly Quisenberry filed applications with the Social Security Administration for disability insurance benefits and supplemental security income benefits. At the time of those applications, Quisenberry was 44 years old and claimed that she became unable to work in her previous jobs as a nurse's assistant and as a caregiver in an assisted-living facility as of May 28, 2009, due to a heart condition, a blood disorder, and mental illness that left her weak, depressed, and "always tired." In her last position as a caregiver, Quisenberry took "care of people by bathing, feeding, clothing, and assisting residents in their daily lives," and "would lift people to place clothes on them." That job required her to walk five hours per day, stand for one hour, sit for one hour, handle large objects for two hours, reach for four hours, frequently lift five pounds, and occasionally lift as much as 150 pounds.

When Quisenberry's claims were denied, she requested a hearing before an administrative law judge. After that hearing, Administrative Law Judge Anthony Smereka issued a written decision finding that Quisenberry was not disabled and, therefore, not entitled to the benefits she sought. The Appeals Council remanded the matter for a second hearing, however, directing the administrative law judge to evaluate further the severity of Quisenberry's anemia, her maximum residual functional capacity, and the completeness of the hypothetical question posed to the testifying vocational expert. Upon remand, Judge Smereka again concluded that Quisenberry was not disabled, and the Appeals Council denied the subsequent request for review. Upon the stipulation by the parties, however, the federal district court remanded the matter for a third administrative hearing, this time before a different administrative law judge. The district court

additionally directed the administrative law judge to "give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide a rationale with specific references to evidence of record in support of assessed limitations."

The mandated hearing was held before Administrative Law Judge B. Lloyd Blair in November 2015, and Judge Blair issued a 22-page decision three weeks later, concluding that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the [applicable] rules." Opting not to file written exceptions with the Appeals Council, Quisenberry filed a complaint directly in federal district court. The matter first was referred to a magistrate judge who concluded that substantial evidence in the record supported the decision of the administrative law judge to deny benefits to Quisenberry. The magistrate judge thus recommended that a summary-judgment motion filed by the Commissioner of Social Security be granted and that the decision of the administrative law judge be affirmed. The district court adopted that recommendation, leading to this appeal.

## DISCUSSION

Although we review a district court's decision regarding Social Security disability benefits *de novo*, *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013), "our review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). Indeed, we are called upon to "affirm the Commissioner's decision if it is based on substantial evidence, *even if substantial evidence would also have supported the opposite conclusion*." *Gayheart*, 710 F.3d at 374 (citation omitted) (emphasis added).

**Analytical Framework for Decision**

Pursuant to the relevant provisions of 42 U.S.C. § 423(a), an individual is entitled to receive disability insurance benefits if the claimant "is insured for disability insurance benefits," "has not attained retirement age," "has filed application for disability insurance benefits," and "is under a disability." 42 U.S.C. § 423(a)(1)(A), (B), (D), and (E). Here, the parties do not dispute that, at all times relevant to her application for benefits, Quisenberry was properly insured, had not yet reached retirement age, and had filed a proper application for disability benefits. Consequently, the broad issue before us on appeal is whether Quisenberry can be considered to be "under a disability."

42 U.S.C. § 423(d)(2) provides that a claimant is considered to be "under a disability" "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." In making such a disability determination, an administrative law judge engages in a five-step, sequential evaluation:

1. If claimant is doing substantial gainful activity, he is not disabled.
2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period

of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520(a)(4)). "[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters*, 127 F.3d at 529 (citations omitted). To determine whether the requisite substantial evidence in the record supports the administrative law judge's decision in this case, we now examine each of these five steps in turn.

**Was Quisenberry Engaged in Substantial Gainful Activity?**

The testimony before the administrative law judge, as well as documentary evidence introduced at the hearings, established that Quisenberry has not been employed since May 28, 2009. Because the applicable regulations define "substantial gainful activity" as "significant and productive physical or mental duties" "done (or intended) for pay or profit," 20 C.F.R. § 404.1510, Quisenberry's unemployed status required that the administrative law judge proceed to the second step of the disability analysis.

**Did Quisenberry Suffer Severe Impairments That Met Durational Requirements?**

At that second step, the administrative law judge considers whether the claimant has "a severe medically determinable physical or mental impairment" that "is expected to result in death" or "be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1509. The administrative law judge found that Quisenberry's medical records established that she suffered from the following impairments: coronary artery disease, status post-stenting; anemia; chronic obstructive pulmonary disease; learning disorder; depression

with anxiety; and substance abuse in complete remission. Moreover, because those impairments significantly limited the claimant's ability to perform basic work activities, the administrative law judge further found those impairments to be "severe" enough to allow the analysis to proceed to the third step of the decisional framework.[1]

**Did Quisenberry's Impairments Meet or Equal a Listed Impairment?**

It is in the consideration of that third step that Quisenberry alleges that the administrative law judge first erred. As provided in 20 C.F.R. § 404.1520(a)(4)(iii) and (d), "If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled," "without considering your age, education, and work experience." Even though Quisenberry admitted that she suffered from numerous conditions, she claims on appeal only that the administrative law judge mistakenly concluded that she neither met nor equaled the Code of Federal Regulations listing for an intellectual disability. The version of that listing that was in effect at the time of the third administrative hearing in this matter provides:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity of this disorder is met when the requirements in A, B, C, or D are satisfied.

>       \*    \*    \*

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and
>  significant work-related limitation of function[.]

---

[1] Quisenberry also claimed to suffer from uterine fibroids, gastroesophageal reflux disease (GERD), a hiatal hernia, arthritis, and fainting spells. The administrative law judge refused to consider those maladies to be "severe impairments," however, either because the condition improved with surgery, because intermittent treatments prevented the maladies from limiting Quisenberry's ability to perform basic work activities, or because the conditions could not be confirmed through medical tests and diagnoses.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (Effective: August 12, 2015, to May 23, 2016).[2]

As an initial matter, the Commissioner argues that Quisenberry has waived this challenge to the determination of the administrative law judge by failing to object specifically to the magistrate judge's discussion of the issue in his report and recommendation. *See* Appellee's Br. at 19. Although "a court of appeals may exercise its supervisory powers to establish a rule that the failure to file objections to the magistrate's report waives the right to appeal the district court's judgment," *Thomas v. Arn*, 474 U.S. 140, 142 (1985), such a rule is procedural only and not jurisdictional. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012). Consequently, we "retain[ ] subject matter jurisdiction over the appeal regardless of the untimely filing or nonfiling of objections," *Kent v. Johnson*, 821 F.2d 1220, 1222-23 (6th Cir. 1987) (citation omitted), and we "may excuse a default if exceptional circumstances are present that justify disregarding the rule in the interests of justice." *Keeling*, 673 F.3d at 458 (citation omitted). Because of the importance of ensuring that deserving claimants receive the disability benefits to which they are entitled, and because Quisenberry did address this contention of error in her memorandum in support of her motion for summary judgment in the district court, we choose to consider in this appeal the merits of this allegation of error.

In arguing that she met or equaled the impairment in Listing 12.05C, Quisenberry first contends that she manifested deficits in adaptive functioning prior to the age of 22. Specifically, Quisenberry claims that she was sexually abused as a young child; she was "sexually promiscuous from the age of 13 to the age of 17"; she married at age 16 and was divorced three years later after giving birth to her first child; she dropped out of school in the 10th grade and failed to obtain a

---

[2] Subsequently, Listing 12.05C was revised significantly.

General Equivalency Diploma GED); she experienced auditory hallucinations in the 1980s; she took an overdose of medication at age 14 and again in 1998; and, for many years, she suffered from pica—an eating disorder that involves the ingestion of non-nutritive substances.

The administrative law judge concluded, however, that the record did not support a finding that any of the claims made by Quisenberry established the presence of the required "deficits in adaptive functioning." As noted by the administrative law judge, Quisenberry still engages in numerous daily activities, including "caring for her disabled husband, caring for her son, driving, grocery shopping, preparing meals, washing dishes, light housecleaning, doing laundry, ironing, caring for her personal hygiene, and caring for family pets." Furthermore, Quisenberry has held jobs as a nurse's aide and a caregiver until a *physical* ailment (a hernia) forced her to leave employment that, as performed, "would be considered heavy, semi-skilled."

Uncontradicted evidence in the record also establishes that Quisenberry denied having developmental delays, and that the claimant, despite having difficulty obtaining a GED and having been placed in special education classes for comprehension issues, left school after the ninth grade, not because of any intellectual shortcomings, but "because of stress and anxiety in the home. Me being the oldest I felt responsible to be at home and I just didn't go back the following year."

Additionally, in the explicit wording of the regulation, a disability based upon Listing 12.05C requires that "significantly subaverage general intellectual functioning with deficits in adaptive functioning" be established by evidence of a "full scale IQ of 60 through 70" and other physical or mental impairments. Regardless of whether Quisenberry suffered from such impairments that imposed additional, significant work-related limitations of function, substantial evidence in the record supports the administrative law judge's determination that "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70."

Elaine Tripi, Ph.D., a licensed psychologist, did administer the Wechsler Adult Intelligence Scale-III test to Quisenberry and noted that the results of the test indicated "a verbal IQ of 68 (extremely low); a performance IQ of 72 (borderline); giving her a full-scale IQ of 67 which places her in the extremely low range of intelligence." Nevertheless, Tripi documented that "[i]t was quite apparent throughout the testing that Ms. Quisenberry lost focus and appeared tired," and that "[t]here were several tests that [Quisenberry] just gave up on because she could not focus and concentrate."

Notably, the administrative law judge highlighted the fact that "Dr. Tripi did not expressly state that she felt the claimant's test scores could be considered a valid interpretation of her intellectual functioning. Indeed, Dr. Tripi's comments about the claimant's testing performance raises serious questions regarding the validity of the claimant's test results." Quisenberry argues that "if the Full Scale IQ score would have been considered 'invalid' by Dr. Tripi, that fact would, most likely, have been noted by Dr. Tripi." Appellant's Br. at 21. However, the applicable regulation in effect at the time of the administrative law judge's decision stated that "since the results of intelligence tests are only part of the overall assessment, *the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid* and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D.6.a. (Effective August 12, 2015, to May 23, 2016). (Emphasis added.)[3]

---

[3] Since March 14, 2018, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00H.2.d. now provides, "We generally presume that your obtained IQ score(s) is an accurate reflection of your general intellectual functioning *unless evidence in the record suggests otherwise*. Examples of this evidence include: a statement from the test administrator indicating that your obtained score is not an accurate reflection of your general intellectual functioning . . . ." (Emphasis added.)

Furthermore, in assessing the claimant's full-scale IQ, "[t]he regulations do not limit the question of validity to test results alone in isolation from other factors," and the results "must reflect the plaintiff's true abilities as demonstrated by his or her performance at work, household management and social functioning." *Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991). In view of the questions raised regarding the validity of Quisenberry's test results, Dr. Tripi's failure to opine on the validity of those results, and the administrative law judge's reasonable evaluation of the medical record, we are constrained to find that substantial evidence supports the decision of the administrative law judge that Quisenberry's limitations did not meet or equal an impairment listed in the applicable regulations. Quisenberry thus failed to prove at step three that she was disabled, requiring us to proceed to the fourth step of the five-step analytical framework.

**Can Quisenberry Perform Her Past Relevant Work?**

At that fourth step, the administrative law judge first must assess a claimant's residual functional capacity, which is defined as "the most [a claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (*en banc*). Once a claimant's residual functional capacity has been determined, the administrative law judge must decide whether the claimant can perform her "past relevant work," defined by the regulations as "work that [a claimant has] done within the past 15 years that was substantial gainful activity, and that lasted long enough for [a claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If a claimant's residual functional capacity allows her to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

At the conclusion of the third administrative hearing in this matter, Administrative Law Judge Blair stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot perform over the shoulder reaching. The claimant can also only frequently, as opposed to constantly, handle and finger. Furthermore, the claimant can never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to wetness, humidity, fumes, odors, dusts, gases, and respiratory irritants. The claimant must also avoid all exposure to workplace hazards, including dangerous and unprotected machinery or work at unprotected heights. Additionally, the claimant is limited to performing simple, unskilled work with one, two, or three step instructions. The claimant cannot perform jobs that involve concentration on detailed/precision tasks or multi-tasking, reading, computing, calculating, or problem-solving. The claimant also cannot perform fast-paced production work or work in which the pace is set by others. Moreover, the claimant cannot perform work that requires contact with the general public.

The administrative law judge then explained that, in considering Quisenberry's alleged limitations, he first is required to determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." If he can make such a determination, he then "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." If the claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [administrative law judge] must make a finding on the credibility of the statements based on a consideration of the entire case record."

Before this court, Quisenberry alleges that the administrative law judge formed his residual-functional-capacity assessment of her without substantial evidence to support his conclusion and without giving appropriate consideration and weight to opinions of doctors "who either treated, evaluated, and/or reviewed medical records." Appellant's Br. at 24. Specifically,

Quisenberry asserts that the administrative law judge failed to accord proper weight to the opinions of Drs. Pamela Herringshaw, Elaine Tripi, Aaron Anderson, Dawn Gventer, and Paul Haduck.

**Pamela Herringshaw, Ph.D.**

Herringshaw evaluated Quisenberry on December 21, 2009, and obtained the claimant's personal history, a listing of her complaints, the treatments and medications she had received, and an accounting of Quisenberry's daily activities and social functioning. After presenting Quisenberry with various tests of memory, current knowledge, and abstract thinking, Herringshaw concluded:

> Based on today's examination and a review of records Mrs. Quisenberry has a long history of depression anxiety with panic attacks, substance abuse and dependency and has had many medical issues over the last few years. She exhibited limited intellectual abilities and had difficulty recalling facts and information about her life. Her overall functioning seems marginal. The prognosis for her return to productive employment seems fair to poor at this time.

The administrative law judge, however, gave little weight to Herringshaw's opinion for numerous reasons. First, he noted that a doctor's "statements that a claimant is 'disabled' or 'unable to work,' or the like, are not medical opinions but are administrative findings dispositive of a case, which can never be entitled to controlling weight." Indeed, 20 C.F.R. § 404.1527(d)(1) and (3) now provide explicitly that no special significance will be given to the source of an opinion—such as whether a claimant is disabled or unable to work—reserved to the Commissioner of Social Security. *See also Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (recognizing same in an earlier version of the applicable regulations).

Second, the administrative law judge determined that Herringshaw's opinions were inconsistent with other record evidence. Specifically, the administrative law judge pointed to testimony and records that indicated that Quisenberry felt that she was "stable on current meds and wants to continue them," and that she had no problems taking care of her personal needs,

communicating her needs to others, understanding what others are saying, learning new skills, walking or getting around, maintaining daily routines without assistance, or remaining under emotional or behavioral control. Other records before the administrative law judge indicated that Quisenberry was "[a]ble to participate in two way communication," that she was "[c]alm, appropriate, and cooperative," that she could "follow simple commands," had sound judgment, effective coping mechanisms, a rational thought process, and appropriate mood, affect, and behavior.

Finally, the administrative law judge noted that Herringshaw's opinion was "quite vague, as she did not actually propose any specific functional limitations that would preclude the claimant from returning to 'productive employment.'" In short, therefore, the administrative law judge relied upon substantial evidence in the record to justify his decision to give little weight to Herringshaw's opinion.

### Elaine Tripi, Ph.D.

On December 21, 2010, exactly one year after Quisenberry was evaluated by Herringshaw, the claimant met with Tripi "for purposes of evaluating her current intellectual functioning and employability." At that appointment, Tripi administered a battery of tests, including the Wechsler Adult Intelligence Scale-III test. Tripi noted in her report that the results of those tests indicated that Quisenberry had a full-scale IQ of 67, "which places her in the extremely low range of intelligence," and that "[s]he has depressed reading, spelling and math skills." Tripi then concluded, "Considering the difficulties that [Quisenberry] is having from a physical standpoint, coupled with her intellectual functioning, it is my professional opinion that she is not a viable rehabilitation candidate. She is not able to sustain substantial, gainful work activity."

Quisenberry now argues that such a report is compelling evidence of her disability. The administrative law judge, however, accorded little weight to Tripi's opinion. As he did when discussing Herringshaw's written report, the administrative law judge made clear that opinions like Tripi's that a claimant is unable to sustain substantial, gainful work activity are administrative findings and not within the purview of a psychologist. Furthermore, Tripi's opinion also failed to consider other, inconsistent record evidence and, importantly, "fails to account for the testing abnormalities in which she noted that the claimant appeared tired and lost focus such that 'there were several tests that she just gave up on because she could not focus and concentrate.'"

The administrative law judge also stated that Tripi's uncritical acceptance of Quisenberry's reports regarding the claimant's physical condition "further reduces the reliability of Dr. Tripi's opinion." Tripi, however, is a licensed psychologist, not a trained medical doctor capable of assessing myriad physical ailments. Nevertheless, Tripi's failure to vouch for the validity of the administered tests, especially in light of the fact that Quisenberry appeared tired and unfocused, is part and parcel of the substantial evidence in the record supporting the administrative law judge's decision regarding the weight to be given to Tripi's opinion.

**Aaron Anderson, D.O.**

Anderson conducted a consultative examination of Quisenberry on March 23, 2013, and concluded that Quisenberry had a history of anemia, which caused her to feel weak and tired, and coronary artery disease, which resulted in chest pain, chest tightness, and palpitations. Nevertheless, he concluded that the claimant could sit for eight hours during a workday, stand for five hours, and walk for one hour. Although Anderson reported that lifting and reaching would be difficult for Quisenberry, he noted that she still could lift and carry up to ten pounds frequently, which is considered to be between one-third and two-thirds of a normal workday.

But Quisenberry asserts that Anderson determined that she could lift and carry up to ten pounds only for one-third of a workday, a determination that corresponds to a finding that the claimant was limited to only *occasional* exertion. Quisenberry thus claims that she was restricted by the doctor to performing sedentary work, 20 C.F.R. § 404.1567(a), and that, combined with her limited education, her severe, medically determinable impairments, her semi-skilled previous work experience, and the fact that she was "closely approaching advanced age," Rule 201.10 of Table No. 1 found at 20 C.F.R. Part 404, Subpart P, Appendix 2 would require the administrative law judge to find Quisenberry to be disabled. Appellant's Br. at 30. However, because Anderson clearly found that the claimant could lift and carry objects weighing up to ten pounds frequently—rather than only occasionally—the finding of disability that Quisenberry seeks is not supported by substantial evidence in the record.

The administrative law judge accorded Anderson's opinions partial weight because they were supported by the medical evidence in the record as a whole and because Anderson was an impartial expert who examined Quisenberry in person. The administrative law judge refused to accord greater weight to Anderson's opinions, however, because the doctor "seemed to uncritically accept as true much of what the claimant reported," even though "there exist good reasons for questioning the reliability of the claimant's subjective complaints."

Substantial evidence in the record supports the administrative law judge's determination of the weight to be given to Anderson's findings. Moreover, assigning even greater weight to Anderson's opinions would not be of value to Quisenberry. Although Anderson did document the claimant's heart and blood disorders and the fact that she had a slightly elevated blood pressure reading at the examination, the rest of his report described an individual who, on paper, appears far from disabled. Specifically, Anderson noted that Quisenberry's heart functions appeared

normal, she had full range of motion in her joints, her grip strength was normal, she had full dexterity in both hands, her "neuro" "[s]trength is 5/5 throughout," her "[m]otor and sensory function remained intact," she was "awake, alert and oriented to person, place and time," her reflexes were "present and symmetrical," she was not disoriented, she was not limited in the use of foot controls, and she could shop, travel, ambulate without assistance, use public transportation, climb steps using a single hand rail, cook, feed herself, care for her personal hygiene, and sort, handle, or use paper or files. In short, Quisenberry's application for disability benefits actually was better served by the administrative law judge's decision to accord only partial weight to Anderson's opinions.

### Dawn Gventer, Psy.D.

Gventer evaluated Quisenberry on March 27, 2013, and concluded, in part, that the claimant's "depressed mood may impact her ability to work appropriately in a work related setting and to relate to others." Gventer also noted that Quisenberry's memory, concentration, and fund of knowledge were impaired, that the claimant demonstrated marked restrictions in her ability to understand, remember, and carry out detailed instructions and in her ability to make judgments on simple work-related decisions, and that she had moderate restrictions in her ability to understand, remember, and carry out even short, simple instructions. Gventer thus stated the Quisenberry's "depressed mood and feeling overwhelmed when stressed will prevent work success."

Despite those conclusions, the administrative law judge decided to give "little weight to Dr. Gventer's opinion because it is inconsistent with the medical evidence and record as a whole, including Dr. Gventer's own narrative report and mental status examination findings, which do not fully support the extent of limitation she proposed." Quisenberry now argues that this decision

by the administrative law judge is not supported by substantial evidence in the record and that greater weight should be accorded Gventer's opinions regarding the claimant's disabilities.

Although substantial evidence in the record indeed may support Gventer's opinions, substantial evidence also supports the administrative law judge's determination that Gventer's conclusions were inconsistent with findings made in other portions of her report. For example, Gventer suggests that Quisenberry's depression may affect her ability to work and relate to others. Yet, her report also notes that the claimant admitted that she feels that her Prozac prescription "is working pretty well." The report also concludes that Quisenberry would be able to manage any benefit funds she receives, that the "prognosis for this claimant is fair," and that she would have no restrictions in interacting with the public, only slight restrictions in interacting appropriately with superiors or co-workers and in responding to changes in a work setting, and only moderate restrictions when responding to work pressures. Furthermore, Gventer noted that Quisenberry "was oriented in all spheres" and that "she has appropriate judgment and insight," thus directly contradicting Gventer's other finding that the claimant would have marked restrictions in making judgments on simple work-related decisions.

### Paul Haduck, D.O.

Finally, Quisenberry asserts that the administrative law judge failed to give appropriate weight to the opinions of Haduck when determining the claimant's residual functional capacity. On July 13, 2009, Haduck prepared a fill-in-the-blank, form note addressed to "To Whom It May Concern" that stated, in its entirety, "*Kimberly Quisenberry* was seen and treated in the office on *07-13-2009* and is unable to work/attend school. And may return to work/school on *until further notice*." Substantial evidence in the record supports the administrative law judge's decision to give little weight to Haduck's opinion. First, the conclusion that Quisenberry is "unable to work"

is one to be made by the administrative decision-maker, not by a medical expert. *See Bass*, 499 F.3d at 511. Second, as noted by the administrative law judge, not only is Haduck's opinion inconsistent with other evidence in the record concerning Quisenberry's treatment, results of her clinical tests, and her own reports of her daily activities, but "Dr. Haduck's opinion is quite vague, and does not actually describe any specific functional limitations that would preclude the claimant from engaging in all work activity in perpetuity."

Substantial evidence in the record thus supports the administrative law judge's conclusion that Quisenberry retained the residual functional capacity to perform light work with the restrictions noted in the administrative decision. Because Quisenberry's previous jobs as an aide and a caregiver were performed at a heavy or a medium-to-heavy exertional level, however, the fact that she now was limited to light work mandated a conclusion that she is unable to perform any past relevant work.

**Can Quisenberry Perform Any Jobs That Exist in the National Economy?**

At the fifth and final step of the sequential analysis to determine whether a claimant for Social Security disability benefits is in fact disabled, the Commissioner must consider whether the claimant's residual functional capacity, age, education, and work experience would allow the claimant to "make an adjustment to other work" that "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2). The Commissioner bears the burden of proof at this final step, *Combs*, 459 F.3d at 643, and usually attempts to meet that burden through the testimony of a vocational expert who is posed a hypothetical question crafted by the administrative law judge. In her final issue in this appeal, Quisenberry contends that the administrative law judge "ignored the vocational expert's opinion relative to the impact of multiple

'moderately severe limitations' on plaintiff's ability to perform light, unskilled jobs." Appellant's Br. at 36-37.

The administrative law judge posed the hypothetical question to the vocational expert in this matter as follows:

> [A]ssume a hypothetical individual in the, in the mags [sic] of light work, should never use ladders, scaffolds or ropes; should avoid concentrated exposure to wetness, humidity, to fumes, odors, dusts, gases, and respiratory irritants; should do no over the shoulder reaching; may frequent[ly] but not constant[ly] . . . handl[e] and finger; should avoid exposure to hazards, including dangerous and unprotected machinery or work at unprotected heights; should have only simple, unskilled work, with one, two, or three-step instructions; no jobs involving concentration, no detailed or precision tasks, multi-tasking, or reading, computing, calculating or problem solving.
>
> Work which does not require contact with, with the general public and no fast-paced production work or work which is dictated – which the pace is dictated by others.

The administrative law judge then inquired whether such a hypothetical individual could perform Quisenberry's past work and whether a "hypothetical person of claimant's vocational profile, relative to age, education, and work history and the previously mentioned limitations" could perform jobs existing in the regional or national economy in significant numbers.

The vocational expert first responded that such an individual could not perform Quisenberry's past work because the hypothetical person was limited to unskilled work, and Quisenberry's prior positions were classified as semi-skilled employment. Nevertheless, the vocational expert testified that the hypothetical person described by the administrative law judge could perform a number of jobs: the approximately 46,000 hand-packager jobs in the United States, including 2,300 such positions in Michigan; the approximately 42,500 assembly jobs in the nation, 1,200 of which were in Michigan; and the approximately 20,000 tester/inspector jobs in the country, 1,000 of which were in Michigan. In light of that testimony by the vocational expert,

the administrative law judge concluded that Quisenberry could not be considered disabled so as to receive Social Security disability benefits.

Quisenberry now insists that the *hypothetical question* posed by the administrative law judge did not include limitations noted by Ron Marshall, Ph.D., after his evaluation of the claimant. Because the hypothetical question tracked the administrative law judge's finding of Quisenberry's residual functional capacity, however, what the claimant actually is challenging in this allegation of error is the failure of the *residual-functional-capacity determination* to include all limitations referenced in Marshall's report. Such a challenge is not appropriate during a step-five analysis. *See, e.g.*, *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's [residual functional capacity] at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

Even if this challenge had been raised at step four in an effort to revise the administrative law judge's residual-functional-capacity determination, substantial evidence in the record supports the administrative law judge's decision not to include in that determination additional moderate limitations identified by Marshall. Marshall's claim that Quisenberry is moderately limited in her "ability to respond appropriately to changes in the work setting" is countered by Dawn Gventer's conclusion that the claimant has only a slight restriction in her ability to "[r]espond appropriately to changes in a routine work setting." Furthermore, Marshall's opinion that Quisenberry is moderately limited in her "ability to travel in unfamiliar places or use public transportation" is countered by Aaron Anderson's determination that the claimant can "use standard public transportation." All other moderate limitations noted by Marshall in his report are contradicted by his own functional-capacity assessment in which he states that Quisenberry, "[r]etains ability to

do rote tasks within medical limitations. Able to follow instructions. Able to work with others. Limited intellectual ability precludes complex tasks."

An examination of Quisenberry's challenge to exclusions from the hypothetical question—even presuming that the challenge had been raised properly during the fourth step of the five-step analysis—shows that substantial evidence in the record supports the determination of the administrative law judge that jobs appropriate for Quisenberry's skills and limitations exist in significant numbers in the national and regional economies. The record thus supports the conclusion that Quisenberry is not disabled.

## CONCLUSION

This case presents a close question. Were we left to our own devices, we likely would have concluded that substantial evidence in the administrative record establishes Kimberly Quisenberry's entitlement to Social Security disability benefits and supplemental security income benefits. Nevertheless, substantial evidence in the record also supports the conclusion reached by the administrative law judge that Quisenberry is not disabled for Social Security purposes. In light of well-established caselaw directing our decisional process in such a situation, we thus AFFIRM the judgment of the district court. We note, however, that if Quisenberry's condition worsens in the future, she may have an opportunity to reapply for benefits, assuming that she otherwise meets the applicable eligibility criteria.